285 P.2d 795

In the Matter of the Last WILL and Testament of William Phillip CLARK, Deceased.

Mary W. CLARK, Claimant-Appellant,

v.

Phillip Thomas CLARK, Ancillary Executor of the Estate of William Phillip Clark, Deceased, Appellee.

No. 5916.

Supreme Court of New Mexico.

July 6, 1955.

Neal & Girand, Hobbs, Martin & Moore, Elvin E. Tackett, Ft. Worth, Tex., for appellant.

Williams & Johnson, Hobbs, Brewster, Pannell, Leeton & Dean, Ft. Worth, Tex., for appellee.

LUJAN, Justice.

This is an appeal by Mary W. Clark, claimant, from a judgment of the district court of Lea County, New Mexico, disallowing certain of her claims against the estate of William Phillip Clark, deceased.

Long prior to his marriage to claimant on February 13, 1951, decedent acquired a considerable amount of real estate in Lea County, New Mexico. On this land he erected several buildings which he leased to different tenants. All rentals were sent direct to decedent at Fort Worth, Texas, and deposited in the Fort Worth National Bank of that city. Some of the rentals were forwarded direct from Hobbs, New Mexico, and the rest from other states.

In all, $143,695.01 was collected in rentals from the New Mexico properties during the marriage of claimant and the decedent. Claimant sought to establish that an amount

of $86,386.92 of the rental money was used by the decedent to discharge or apply upon his separate debts, and she here appeals from the decision of the lower court disallowing her claim to reimbursement of half the latter sum under her argument the money so received was community property.

Twenty one errors are assigned which counsel for claimant argues under two points, as follows:

"(1) Under the laws of Texas money consisting of rents from the separate property of the husband is community property.

"(2) Money consisting of rents of the separate real estate of the husband, which real estate is situated in New Mexico, received in Texas, the state of a marital domicil is governed by the community property of the laws of Texas and is community property."

■ We agree with counsel's point one that under the laws of the state of Texas the rents received from the separate property of either spouse, located in Texas, during the existence of the marital relationship is community property; but do not agree with the second point that the devolution of decedent's separate estate situated in the state of New Mexico is governed by the community property laws of Texas.

The Legislature in 1907, with deliberation, enacted Chapter 37, Section 9, § 57-3-5, 1953 Comp. which reads as follows:

"All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is his separate property."

This legislative declaration is without ambiguity and is perfectly understandable. This established public policy of the state is supreme, and will not be relaxed upon the ground of comity to enforce rights of parties which contravene it even if such rights exist in a sister state. And we take it, it is not the duty of the courts of this state to extend to a citizen of another state a right or privilege that would not be extended to one of our own citizens in a matter of this kind.

■ Under the declared public policy of this state the rents, issues and profits from the separate property of either spouse, situated in this state, is the separate property of either and the mere fact that the rental money was sent to the State of Texas did not lose its character as such.

It is said in Thompson on Real Property, Perm. Ed., Vol. 2, § 952, that:

"It is a general rule of the modern law of property that to the owner belong the fruits, rents, issues, and profits. In the law of community this general law was observed as to community property, but for historic reasons, was violated as to separate prop-

erty. In some states the rents, issues, profits, income, and increase of the separate property of either spouse remain separate property. 'Rents, issues and profits' are now separate in Arizona, California, Nevada, New Mexico, and Washington, and these have come to have ·a reasonably fixed meaning in the law, and so long as the property in question is either 'rents, issues or profits' of separate property, *it is separate by statute and the question ends.* It is only when the property in question is produced by the efforts of the spouses, in some way aided by separate capital, that there is any question. * * *" (Emphasis ours)

In Harvard Law Review, Vol. 23, page 260, it is said:

"* * *. When, for instance, it is said that the law of the domicile of the deceased person governs the devolution of his personal property at his death, this means that the law of the place where the property is situated by an act of legislation adopts this domiciliary law as the law to govern the inheritance. We are apt, as a consequence of the very general adoption of this rule, to close our eyes to the fact that it is an act of the law of the place of *situs;* but it is quite clear that the place of *situs* may adopt this law of the domicile or not, at its pleasure, for the devolution of property within its control, and therefore that if the law of the domicile is applied it is by reason of a legislative act of the *situs.*"

The rule is very aptly stated in ⸍the Restatement of the Law—Conflict of Laws Section 293 as follows:

"Movables Held Separately Taken Into Another State. Interest in movables held separately by either spouse remains separate interests although the movables are taken into a state which creates community interests therein."

The comment under this section is worth noting.

"a. The rule stated in this section is applicable although the separate interests are acquired in the first state under such circumstances that, by the law of the second state, they would have been held in community if they had been there acquired.

"b. Dealings After Movables Taken Into the Second State. Money and other movables owned by a spouse as separate property do not cease to be separate property when brought into a community state. * * *"

See, also, In re Estate of Hale, 2 Coff. Prob., Cal., 191.

And in 14 Cyc. page 22, it is said:

"There is no doubt that every state has power to establish and regulate the

rights or property in things within its jurisdiction, whether the property is real or personal, movable or immovable. Accordingly the law of the place under which an ancillary administration is taken must govern the distribution of the assets in the payment of debts there. Some states have exercised this power for the *purpose of regulating the descent and distribution of personal property within their limits,* as well *as of real estate, notwithstanding the laws of the domicile of the owner."* (Emphasis supplied.)

See, also, 18 C.J. Descent and Distribution, sections 8(b) and 9(c); and 26 C.J.S., Descent and Distribution (Modification of general rule) § 5.

In Wooley v. Shell Petroleum Corporation, 39 N.M. 256, 45 P.2d 927, 932, this court speaking through Justice Watson, said:

"When a court is called upon to recognize foreign law, it is bound to consider *domestic public policy.* Thus perceiving Barney v. Hutchinson [25 N.M. 82, 177 P. 890] in its true principle, and viewing the conduct of these children as raising an equity calling for this kind of relief rather than as the technical consideration of an executory contract, the decision constitutes a *declaration of New Mexico public policy not to be ignored.*

"The territorial Supreme Court laid down the rule that 'the validity of a contract executed in a sister state will be determined by the courts of this jurisdiction according to the laws of such sister state as construed by the highest court of such state, * * * *unless such a construction conflicts with some settled policy of this jurisdiction.'* * * * We find no statement of law which requires one jurisdiction to *forego its own public policy to maintain that of another."* Emphasis ours.)

In the Commissioner of Internal Revenue v. Skaggs, 5 Cir., 122 F.2d 721, 723, it was held as to income from real property in California, that the community property laws of California, which made such income separate, fixed its character so that when received by members of a marital community in Texas, it was still separate. The court said:

" * * *. The Board in this case recognized that the California land was subject to California law only, and that the rents from it prior to accrual were a part of the land, but thought that after accrual the rents were mere choses in action having no actual situs and would take a fictional situs at the domicile of Skaggs for tax purposes, and thus fall under the Texas law and become the property of himself and wife. We think the reasoning too

artificial and tenuous. The receipt of the rents, issues or profits of land constitutes its enjoyment. A deed or devise of the income from property gives a corresponding right in the property itself. * * * If the Texas community law can transfer to Skaggs' wife a half interest in the rents and profits of his land in California, it in effect gives her a half interest in the land for the period of the marriage. An immature crop, like unaccrued rent, is a part of the land; and it becomes personalty when gathered—just as rent past due does—no longer passing with the land as part of it; but we think in neither case would the law of another state be effective to change the ownership of the crop on its gathering, or of the rent on its becoming due. * * * The rent on this California land was certainly the property of Skaggs at the moment it became due. We do not think the Texas law, being a statute real, operates to change the ownership instantly afterwards."

Also, see, Marsh, Marital Property in Conflict of Laws, page 169 Sec. 6, Income from Property.

The fact that, under the laws of Texas, the rents, issues and profits derived from the separate property of either spouse, situated in Texas, during the existence of the marriage, is considered community property, would not operate to extend the same rights growing out of similar transactions in New Mexico.

We conclude that the district court correctly decided, as a matter of law, that since the laws of Texas and the laws of New Mexico, being in direct conflict, the laws of the state of New Mexico in relation thereto are controlling.

It follows from what has been said that the judgment of the district court should be affirmed.

It is so ordered.

COMPTON, C. J., and SADLER, McGHEE and KIKER, JJ., concur.