# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __March 19, 2015__

**NO. 32,403**

**KIMBERLY MONTAÑO,**

Plaintiff-Appellee,

v.

**ELDO FREZZA, M.D.,**

Defendant-Appellant,

and

**LOVELACE INSURANCE COMPANY,**
**a domestic For-Profit Corporation,**

Defendant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**


Jones, Snead, Wertheim & Clifford, P.A.
Jerry Todd Wertheim
Roxie De Santiago
Samuel C. Wolf
Elizabeth C. Clifford
Santa Fe, NM

for Appellee

Hinkle, Hensley, Shanor & Martin, LLP
William P. Slattery
Dana S. Hardy
Zachary T. Taylor
Santa Fe, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb PA
Nelson Franse
Brian Brack
Albuquerque, NM

for Lovelace Insurance Company

**OPINION**

**BUSTAMANTE, Judge.**

{1}     This case is one of three presently before the Court of Appeals that involve the asserted medical negligence of then Texas-based physician Dr. Eldo Frezza. *See Gonzales v. Frezza*, COA No. 32,606, and *Gallegos v. Frezza*, COA No. 32,605. The issue presented in this case is whether Dr. Frezza should enjoy the immunity granted by the Texas Tort Claims Act (TTCA) when he is sued by a New Mexico resident in a New Mexico court. We conclude that under principles of comity Dr. Frezza is entitled to immunity, but only so far as that immunity is consistent with the New Mexico Tort Claims Act (NMTCA). We also conclude that the district court's order was too broadly worded. Hence, we affirm in part and vacate in part the district court's ruling and remand for further proceedings.

**BACKGROUND**

{2}     Like the plaintiffs in the other two cases, Ms. Montaño, a New Mexico resident, traveled to Lubbock, Texas to undergo bariatric surgery by Dr. Frezza at the Texas Tech University Health Sciences Center (the Center). Ms. Montaño had been told by her insurer, Lovelace Insurance Company (Lovelace), that Dr. Frezza was the only bariatric surgeon for whom it would provide coverage. For approximately six years, Ms. Montaño traveled to Lubbock for follow-up care and treatment by Dr.

Frezza for complications arising from the surgery. Eventually, testing by another doctor revealed gastrointestinal bleeding caused by an "eroding permanent suture." That doctor performed corrective surgery.

{3} At all times relevant to this case, Dr. Frezza was an employee of the Center, which is a governmental unit of the state of Texas. *See Tex. Tech Univ. Health Scis. Ctr. v. Ward*, 280 S.W.3d 345, 348 (Tex. App. 2008) (stating that the center is a governmental unit). The Center established Texas Tech Physician Associates (TTPA) to administer managed care contracts for its physicians, including the contract with Lovelace. Although not a party to the contract, Dr. Frezza was a "represented physician" subject to the terms of the contract. Additional facts are included in our discussion.

{4} Ms. Montaño filed suit against Dr. Frezza and Lovelace, alleging breach of contract and negligent referral by Lovelace, medical negligence by Dr. Frezza, violation of the New Mexico Unfair Practices Act by both Dr. Frezza and Lovelace, and lack of informed consent. Dr. Frezza filed two motions for dismissal. One motion asserted that New Mexico did not have personal jurisdiction over him. In the other he argued that as a Texas public employee he was immune from suit under the TTCA. *See* Rule 1-012(B)(2), (6) NMRA. The district court determined that New Mexico law, not the TTCA, should be applied. The district court also concluded that

Dr. Frezza had sufficient contacts with New Mexico such that New Mexico courts court assert personal jurisdiction over him. The district court then denied both motions. Dr. Frezza filed a motion to reconsider the denial of his motion to dismiss based on personal jurisdiction. The motion to reconsider is still pending below.

{5} Dr. Frezza petitioned this Court for a writ of error under the collateral order doctrine, arguing that the district court erred in concluding that New Mexico law applied. *See* Rule 12-503 NMRA. The petition, which addresses only this issue, was granted.

**DISCUSSION**

**A. The Petition for Writ of Error was Appropriately Granted**

{6} We begin by addressing whether the district court's decision to apply New Mexico law is appropriate for appellate review under the collateral order doctrine. Generally, appeal lies only from a "final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights[.]" NMSA 1978, § 39-3-2 (1966). "The principle of finality [evinced in this statute] serves a multitude of purposes, including the prevention of piecemeal appeals and the promotion of judicial economy." *Handmaker v. Henney*, 1999-NMSC-043, ¶ 7, 128 N.M. 328, 992 P.2d 879. An exception to this preference for finality is known as the collateral order

doctrine, "whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Carrillo v. Rostro*, 1992-NMSC-054, ¶ 16, 114 N.M. 607, 845 P.2d 130 (internal quotation marks and citation omitted). To permit review under the doctrine, "(1) the order must finally determine the disputed question; (2) it must concern an issue that is entirely separate from the merits of the claim; and (3) there must be no effective remedy by appeal." *Handmaker*, 1999-NMSC-043, ¶ 9.

{7} Our cases have held that where an order addresses a party's immunity from suit, as opposed to immunity from liability, it satisfies the collateral order doctrine criteria. *See Campos de Suenos, Ltd. v. Cnty. of Bernalillo*, 2001-NMCA-043, ¶ 15, 130 N.M. 563, 28 P.3d 1104 (stating, "We issue writs of error to review immunity from suit cases because we consider them collateral order[s] affecting interests that would be irretrievably lost if the case proceeded to trial." (alteration in original) (internal quotation marks and citation omitted)); *accord Handmaker*, 1999-NMSC-043, ¶ 14; *Carrillo*, 1992-NMSC-054, ¶ 20; *Sugg v. Albuquerque Pub. Sch. Dist.*, 1999-NMCA-111, ¶ 8, 128 N.M. 1, 988 P.2d 311; *cf. Carmona v. Hagerman Irrigation Co.*, 1998-NMSC-007, ¶ 21, n.5, 125 N.M. 59, 957 P.2d 44 ("The [NMTCA] provides immunity from liability, not absolute immunity from suit, so the

4

collateral order exception to the finality of judgments rule would not apply in this case.").

{8} To the extent that Ms. Montaño argues that the writ of error was improvidently granted because the collateral order doctrine criteria were not satisfied, we disagree. Ms. Montaño contends that the real question before the district court depended on the nature of TTPA's contract with Lovelace and thus the district court's order (1) did not resolve the question, and (2) was dependent on the merits of the case. But the question before the district court was a basic one: whether New Mexico or Texas law should apply. As will be seen in our discussion below, the answer to this question does not involve detailed examination of the facts related to Dr. Frezza's practice. Application of Texas law here would result in dismissal of Ms. Montaño's suit against Dr. Frezza because the TTCA does not permit suits against government employees acting within their employment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2013). Because the choice of law encompasses whether Dr. Frezza is immune from suit, the decision necessarily implicates a right that would be "irretrievably lost" if not heard by this Court. *See Campos de Suenos, Ltd.*, 2001-NMCA-043, ¶ 15. We conclude that the district court's order is properly before us for review.

## B.     New Mexico Law Applies

{9}     We turn to whether the district court properly analyzed whether New Mexico or Texas law governs Ms. Montaño's suit.  In doing so, we "review the district court's decision to use a comity analysis de novo, and then review a district court's application of comity for abuse of discretion."  *Sam v. Sam*, 2006-NMSC-022, ¶ 9, 139 N.M. 474, 134 P.3d 761.  Dr. Frezza does not challenge the district court's decision to embark on its comity analysis.  Thus, as to the comity issue, we only determine whether the district court's decision exceeded the bounds of its discretion.  We begin, however, by addressing the "place-of-the-wrong" rule, and then address whether the district court properly analyzed whether Texas law should apply under principles of comity.

{10}     Although some states have adopted the "most significant relationship" approach to the choice of law, the New Mexico Supreme Court has continued to endorse the "place-of-the-wrong" rule in choice of law cases.  *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶¶ 12, 14, 140 N.M. 293, 142 P.3d 374 (stating that "New Mexico courts have steadfastly applied the *lex loci delicti* rule in tort cases"); *see* Restatement (Second) of Conflict of Laws § 6 (1971); 15A C.J.S. *Conflict of Laws* § 38 (2014).  Under this rule, "the substantive rights of the parties are governed by the law of the place where the wrong occurred."  *Terrazas*, 2006-NMCA-111,

6

¶ 12. "The place of the wrong . . . is the location of the last act necessary to complete the injury." *Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 894 P.2d 386 (internal quotation marks and citation omitted).

{11} But the place-of-the-wrong rule may give way when policy considerations outweigh its application. *See In re Estate of Gilmore*, 1997-NMCA-103, ¶ 18, 124 N.M. 119, 946 P.2d 1130 ("[P]olicy considerations may override the place-of-the-wrong rule."). For instance, in *Torres*, the New Mexico Supreme Court held that New Mexico law should apply where the alleged negligence of the Albuquerque Police Department resulted in a death in California because "public policy dictates that New Mexico law determine the existence of duties and immunities on the part of New Mexico officials." 1995-NMSC-025, ¶ 14 (alteration, internal quotation marks, and citation omitted). Similarly, in *Sam*, the New Mexico Supreme Court reversed the Court of Appeals, which had relied on the place-of-the-wrong rule to conclude that New Mexico law should apply where the plaintiff sued an Arizona governmental unit over an accident that occurred in New Mexico. 2006-NMSC-022, ¶¶ 1, 6, 29. The general rule derived from these cases is that "we begin with a strong presumption in favor of application of the place-of-the-wrong rule, but we will not close our eyes to compelling policy arguments for departure from the general rule in specific circumstances." *In re Estate of Gilmore*, 1997-NMCA-103, ¶ 21.

{12} The district court determined that "New Mexico is the location of the last act necessary to complete the injury because [Ms. Montaño's] injuries manifested themselves in New Mexico." Based on its decision that the injury manifested itself in New Mexico, the district court concluded that "New Mexico law applies" to the case. We perceive no error in the district court's Restatement-based place-of-the-wrong analysis.[1] *See Torres*, 1995-NMSC-025, ¶ 13; *Roberts v. Piper Aircraft Corp.*, 1983-NMCA-110, ¶ 9, 100 N.M. 363, 670 P.2d 974; *Beh v. Ostergard*, 657 F. Supp. 173, 175-76 (D.N.M. 1987).

{13} However, the outcome of the place-of-the-wrong analysis does not end the matter. The district court understood this. Recognizing that Dr. Frezza was an employee of the State of Texas and potentially immune from suit under Texas's TTCA, the district court went on to conduct an analysis of whether it should apply

---

[1]The special concurrence takes issue with our discussion of and approval of the district court's application of the place-of-the-wrong rule. We disagree that it was error for the district court to begin with this analysis. In *Sam*, the Supreme Court stated that appellate courts should "review the district court's decision to use a comity analysis *de novo*" and that this review assesses "the appropriateness of a district court's decision to engage in a comity analysis." 2006-NMSC-022, ¶¶ 9, 12. This language suggests that the decision to engage in the comity analysis itself depends on a prior legal conclusion that it is necessary. If the place-of-the-wrong rule indicated that Texas law applied, there would have been no need to proceed to a comity analysis. Thus, if the question could have been resolved by relying on an established set of legal principles not requiring a detailed policy analysis, it was not error for the district court to begin with that tack.

8

Texas law as a matter of comity. The presence of a defendant who can colorably assert his status as a Texas state actor entitled to the protection of Texas's sovereignty as expressed in the TTCA required the district court—and requires us—to engage in a comity analysis. In this circumstance, the comity analysis all but displaces the place-of-the-wrong analysis in resolving the issues before us. Thus, we move on to comity.

{14} The concept of comity as a tool for deciding choice-of-law issues in the United States has a long history, most of which is not necessary to recount here. *See generally* Holly Sprague, *Choice of Law: A Fond Farewell to Comity and Public Policy*, 74 Calif. L. Rev. 1447, 1449-50 (1986). We do note that comity concerns play a role in the Restatement (Second) formulation of a conflict-of-law analysis. *See* Restatement (Second) of Conflict of Laws § 6 (1971). The role of comity in actions against states or their employees in the courts of their sister states, however, was unexplained and unclear until the Supreme Court's opinion in *Nevada v. Hall*, 440 U.S. 410 (1979).

{15} In *Hall*, a California resident sued the University of Nevada in the California courts for injuries he suffered in an auto collision that occurred in California. The California courts accepted jurisdiction of the case, and after a verdict was entered, refused to honor the statutory damages limit set by Nevada law for actions against

Nevada governmental entities. *Id.* at 412-13. *Hall* held, as a matter of first impression, that there was nothing in the federal constitution preventing a state from being sued in another state, assuming personal and subject matter jurisdiction was otherwise appropriate. The Court held that nothing "in Art. III authorizing the judicial power of the United States, or in the Eleventh Amendment limitation on that power, provide any basis, explicit or implicit, for this Court to impose limits on the powers of California exercised in this case." *Id.* at 421. The Court also held that the "Full Faith and Credit Clause does not require a [s]tate to apply another [s]tate's law in violation of its own legitimate public policy." *Id.* at 422. Finally, the Court ruled that no other provision of the Constitution—including the Commerce Clause, the Extradition Clause, and the Privileges and Immunities Clause—supported any conclusion other than that "one [s]tate's immunity from suit in the courts of another [s]tate is [nothing] other than a matter of comity." *Id.* at 425. The Supreme Court provided no guidance in *Hall* as to how the states could or should exercise this comity.

{16}    The Supreme Court again visited the issue of interstate immunity in the case of *Franchise Tax Board of California v. Hyatt*, 538 U.S. 488 (2003). In *Hyatt*, a Nevada resident sued a California tax collection agency in Nevada for damages, asserting both negligent and intentional torts. The trial court denied the California

10

agency's motion to dismiss for lack of subject matter jurisdiction. The Nevada Supreme Court reversed in part, holding that the theories sounding in negligence should have been dismissed under comity principles, but concluding that the intentional tort claims could proceed to trial. 538 U.S. at 492. The Nevada Supreme Court acknowledged that California had granted its agency complete immunity from suit. Nevertheless, noting that Nevada does not provide immunity for acts taken in bad faith or for intentional torts, the Nevada Supreme Court held that "Nevada's interest in protecting its citizens from injurious intentional torts . . . committed by sister states' government employees should be accorded greater weight than California's policy favoring complete immunity for its taxation agency." 538 U.S. at 493-94 (internal quotation marks and citation omitted).

{17}    In a unanimous opinion, the Supreme Court affirmed its holding in *Hall* that the "Constitution does not confer sovereign immunity on [s]tates in the courts of sister [s]tates." *Hyatt*, 538 U.S. at 497. The Supreme Court also affirmed and strengthened its prior ruling that the Full Faith and Credit Clause does not require Nevada to honor California's statute, noting that:

> There is no principled distinction between Nevada's interests in tort claims arising out of its university employee's automobile accident, at issue in *Hall*, and California's interests in the tort claims here arising out of its tax collection agency's residency audit.

*Hyatt*, 538 U.S. at 498.

11

{18} As in *Hall*, the Supreme Court in *Hyatt* provided no guidance as to how the states should apply comity principles when resolving suits against sister states. It did observe that it saw no "policy of hostility" toward California by Nevada. *See Hyatt*, 538 U.S. at 499. Rather, it noted, Nevada had "sensitively applied principles of comity with a healthy regard for California's sovereign status, relying on the contours of Nevada's own sovereign immunity from suit as a benchmark for its analysis." *Id.*

{19} Abstract descriptions of "comity" are as varied as the opinions applying them. In *Hyatt*, for example, the Nevada Supreme Court phrased the principle as "an accommodation policy, under which the courts of one state voluntarily give effect to the laws and judicial decisions of another state out of deference and respect, to promote harmonious interstate relations[.]" 538 U.S. at 493 (internal quotation marks and citation omitted). Closer to the case at hand, a Texas court described it as "a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign, not as a rule of law, but rather out of deference or respect. It is a doctrine grounded in cooperation and mutuality." *State of N.M. v. Caudle*, 108 S.W.3d 319, 321 (Tex. App. 2002) (citation omitted)).

{20} Even closer to home, in *Sam*, our Supreme Court described comity as "a principle whereby a sovereign forum state recognizes and applies the laws of another state sued in the forum state's courts. The sovereign forum state has discretion

12

whether or not to apply the laws of the other state." 2006-NMSC-022, ¶ 8. These formulations emphasize the core concerns of comity—mutual respect and harmonious relationships while protecting the forum state's own policy choices—but they provide no specific guideposts to follow as the comity decision is made.

{21} In *Sam*, our Supreme Court did provide guideposts. First, the Court set the stage by noting that comity should be extended to other states but only if doing so will not violate or undermine New Mexico's own important public policies. *Id.* ¶¶ 13, 21. *Sam* then suggested four factors our courts should take into account when "determining whether extending immunity through comity would violate [New Mexico's] public policy." *Id.* ¶ 22. In determining whether to extend immunity, courts should consider: "(1) whether the forum state would enjoy similar immunity under similar circumstances, (2) whether the state sued has or is likely to extend immunity to other states, (3) whether the forum state has a strong interest in litigating the case, and (4) whether extending immunity would prevent forum shopping[.]" *Id.* (citations omitted).

{22} Unfortunately *Sam* does not provide any indication how the four factors should be weighed as between themselves. And, more importantly, *Sam* does not provide explicit guidance as to how or when courts should fold in the comparative public policy analysis which is central to deciding whether honoring the state's immunity

13

law improperly contravenes our own public policy choices. It is not clear whether that discussion must be had within the parameters of each factor or whether it is more appropriately conducted separately and used as a bright backdrop when assessing the impact of the four factors.

{23} Thus, we confess some confusion as to how *Sam* should be applied. We also perceive some confusion in the district court about the matter. As a drafting solution, we will deal with each factor on its terms, comparing and contrasting Texas and New Mexico law as appropriate, but we will also separately sum up the public policy implications of the factors and the differences in the two states' laws.

{24} We first examine the district court's assessment of the four *Sam* factors for an abuse of discretion. *See id.* ¶ 9. As to the first factor, the district court found that "it is unlikely the State of Texas would extend immunity to the State of New Mexico under similar circumstances[.]" This is not a correct formulation of the first factor. This factor was derived from *Head v. Platte County, Missouri*, 749 P.2d 6 (Kan. 1988), in which the Kansas Supreme Court considered whether to apply Missouri law in a suit between a Kansas resident and a Missouri county. *Id.* at 7, 10. The court concluded that application of Missouri law would afford Missouri defendants greater protections than Kansas provided to its own citizens. *Id.* at 10. It stated, "If Missouri has sovereign immunity within our borders, a Kansas resident would be denied all

recovery for injury caused by Missouri agents in this state, even though if agents of the State of Kansas had committed the same act, recovery could be permitted under our [t]ort [c]laims [a]ct." *Id.* (McFarland, J., dissenting); *accord Morrison v. Budget Rent A Car Sys.*, 230 A.D.2d 253, 268 (N.Y. App. Div. 1997). Similarly, the *Sam* court's analysis under the first factor addressed whether "a similar action brought against a New Mexico entity or government employee would be barred by the . . . [NMTCA]." 2006-NMSC-022, ¶ 23. Thus, in the context of this case, the first factor should be stated as follows: would a similar action against a New Mexico governmental entity or employee be barred by the NMTCA? The answer to this question is clearly "no" because, as we discuss in more detail below, contrary to the TTCA, the NMTCA permits suits against government employees. In addition, as we explain below, the TTCA's strict occurrence-based notice of claim provision would clearly preclude Ms. Montaño's action, whereas the NMTCA notice provision allows for discovery-based calculation of time. We view both of these provisions as important aspects of New Mexico immunity law that merit protection.

{25} Thus, although for different reasons, we agree with the district court that this factor weighs against enforcing the TTCA. *See In re Clark's Will*, 1955-NMSC-063, ¶ 7, 59 N.M. 433, 285 P.2d 795 (stating that comity does not require "the courts of

15

this state to extend to a citizen of another state a right or privilege that would not be extended to one of our own citizens in a matter of this kind").

{26} The second factor is whether Texas has or will extend immunity to New Mexico. *Sam*, 2006-NMSC-022, ¶ 22. Dr. Frezza relies on *Caudle* in support of his argument that the second factor weighs in favor of extending immunity. The district court found that *Caudle* "has limited application in the context of this matter[.]" We agree. In *Caudle*, Texas residents employed by the State of New Mexico alleged in a Texas court that their retirement plan provided by the State of New Mexico "violate[d] the . . . Texas Constitution and . . . the Fourteenth Amendment to the United States Constitution." 108 S.W.3d at 321. The Texas Court of Appeals began by stating that "Texas should extend comity by recognizing the laws and judicial decisions of other states unless (1) the foreign state declines to extend comity to Texas or sister states under the same or similar circumstances, or (2) the foreign statute produces a result in violation of Texas'[s] own legitimate public policy." *Id.* It concluded that since New Mexico had "extended comity to its sister states[,]" it would consider New Mexico a "cooperative jurisdiction." *Id.* It then determined that since it is the responsibility of each state to determine the constitutionality of its own statutes, "[i]t is . . . good public policy for Texas to avoid scrutinizing its sister states' statutes to determine their constitutionality under either the United States Constitution

or the Texas Constitution." *Id.* at 322. The court consequently ordered the matter dismissed. *Id.*

{27}   *Caudle* is not dispositive of the second comity factor for two reasons. First, under Dr. Frezza's reasoning, Texas's determination to extend comity in one case would mean that it would have no reason to analyze whether to apply comity in any other contexts. In other words, the first case extending comity to New Mexico would settle the issue forever. But since the Texas courts have analyzed whether to apply comity in cases both before and after *Caudle*, this is clearly not the course Texas has taken. *See, e.g.*, *Robertson v. Estate of McKnight*, 609 S.W.2d 534, 537 (Tex. 1980) (applying New Mexico law on interspousal immunity); *N.M. State Univ. v. Winfrey*, No. 11-10-00213-CV, 2011 WL 3557239, at *2 (Tex. App. Aug. 11, 2011) (comparing the jurisdiction and venue provisions of the NMTCA and the TTCA and applying the NMTCA). Nor does such an approach comport with the *Sam* court's characterization of the comity analysis as "fact-intensive," indicating that the factors must be examined in the context of the circumstances of each case. 2006-NMSC-022, ¶ 12; *see City of Raton v. Ark. River Power Auth.*, 611 F. Supp. 2d 1190, 1212 (D.N.M. 2008) (discussing the *Sam* holding and concluding that a "case-by-case approach to the comity analysis" is required). Second, the policy interest served by dismissal of the *Caudle* matter—that New Mexico courts should interpret the

17

constitutionality of New Mexico's statutes—is entirely different from the policies at play here. *See* 108 S.W.3d at 322.

{28}    *Winfrey,*[2] which is not cited by either party and was not considered by the district court, provides more compelling support for Dr. Frezza's position than *Caudle*. In *Winfrey*, the Texas Court of Appeals considered whether to apply the NMTCA as a matter of comity where a Texas resident sued New Mexico State University (NMSU) for damage done to his sheep when a weather balloon owned or operated by NMSU fell on his land in Texas. 2011 WL 3557239, at *1. NMSU moved for dismissal based on a lack of jurisdiction, which the district court denied. *Id.* The court of appeals started its analysis by reiterating the two-part test for comity set out in *Caudle*, stating that "comity . . . will be applied to a cooperating state so long as the law of that state does not offend Texas public policy." *Winfrey,* 2011 WL 3557239, at *1. After determining that New Mexico was a cooperating state, the court examined the purpose of the NMTCA and TTCA and their provisions related to jurisdiction and venue. *Id.* at *1-2. It concluded, "Our comparison of the[se] similar provisions leads to the conclusion that [NMSU has] satisfied the second prong

---

[2]*Winfrey* is not reported in South Western Reporter 3d. According to the commentary associated with Texas Rules of Appellate Procedure 47.2 and 47.7, however, "[a]ll opinions and memorandum opinions in civil cases issued after the 2003 amendment [to the rules] have precedential value." *Id.* (notes and comments). Hence, we consider *Winfrey* as a precedential opinion of the Texas Court of Appeals.

of the principle of comity: the jurisdiction and venue provisions of the [NMTCA], as applicable in this case, do not violate the public policy of Texas." *Id.* The court concluded, therefore, that it should apply the NMTCA and that since the NMTCA (1) vested exclusive jurisdiction in the New Mexico district courts and (2) required that the suit be brought in Santa Fe County, the suit should be dismissed "for lack of jurisdiction." *Id.* at *1, 2 (internal quotation marks omitted); *see* NMSA 1978, § 41-4-18(B) (1976) ("Venue for any claim against the state or its public employees, pursuant to the Tort Claims Act, shall be in the district court for the county in which a plaintiff resides, or in which the cause of action arose, or in Santa Fe county.").

{29} Although Texas applied New Mexico law on jurisdiction and venue in *Winfrey*, the *Winfrey* holding does not compel us to conclude that Texas would apply the NMTCA's other provisions under the circumstances of this case. The *Winfrey* court's analysis was based on the similarity of the two acts' venue and jurisdiction requirements. *Cf. Univ. of Iowa Press v. Urrea*, 440 S.E.2d 203, 205 (Ga. Ct. App. 1993) (stating that where two statutes' provisions were "conceptually identical" the forum state "should recognize and give effect to the legislatively declared policy of [the other state] as a matter of comity"). The court did not consider the portions of the NMTCA and TTCA at issue in this case, which are very different. Consequently, it is not clear whether Texas would extend immunity to New Mexico under the

19

circumstances here. *But see Hawsey v. La. Dep't of Soc. Servs.*, 934 S.W.2d 723, 727 (Tex. App. 1996) (affirming dismissal of an action under Louisiana law and stating, "Louisiana's waiver of sovereign immunity is more extensive than that of Texas, yet we cannot say it violates our public policy"); *Greenwell v. Davis*, 180 S.W.3d 287, 298 (Tex. App. 2005) ("Even though the amounts of the waivers differ, applying Arkansas' limited waiver of sovereign immunity would not be contrary to Texas public policy. The mere fact that the law of the other state differs from Texas does not render it so contrary to Texas public policy that Texas courts will refuse to enforce it." (footnote omitted)). Although neither *Caudle* nor *Winfrey* are conclusive on this issue, we will assume without deciding that Texas would extend immunity to New Mexico in a similar situation. *See Hall*, 440 U.S. at 425 (stating that the Court has "presumed that the [s]tates intended to adopt policies of broad comity toward one another [based on] state policy"); *Sam*, 2006-NMSC-022, ¶ 16 (acknowledging the presumption).

{30} We turn to the third factor: "whether the forum state has a strong interest in litigating the case[.]" *Sam*, 2006-NMSC-022, ¶ 22. Although its interest is bounded by the limits of the NMTCA, *id.* ¶ 25, "New Mexico has a particular interest in providing compensation or access to the courts to residents of the state." *Id.* ¶ 26. Here, if Texas law applies, Ms. Montaño would be left without any recourse against

20

Dr. Frezza or his employer. This fact heightens New Mexico's interest in providing a forum. *Cf. Flemma v. Halliburton Energy Servs., Inc.*, 2012-NMCA-009, ¶ 25, 269 P.3d 931 ("New Mexico courts will apply New Mexico law to automobile insurance contracts that were formed in other states if innocent accident victims would be otherwise unprotected."), *rev'd on other grounds*, 2013-NMSC-022, 303 P.3d 814; *Levert v. Univ. of Ill. at Urbana/Champaign ex rel. Bd. of Trustees*, 2002-2679, pp. 17-18 (La. App. 1 Cir. 9/26/03), 857 So. 2d 611, 622 (holding that "because [the] plaintiffs/appellants have recourse to individually seek full redress of their claims in [the sister state], [that state's] sovereign immunity law does not violate Louisiana's public or judicial policies"). On the other hand, because Dr. Frezza is an employee of the State of Texas, that state also has an interest in the case. *Cf. Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 34, 143 N.M. 36, 172 P.3d 173 (stating, in the context of a personal jurisdiction analysis, that because the defendant "[h]ospital [wa]s not only located in Texas but . . . [was] also an entity of the government of the State of Texas[, i]t [was] . . . clear that Texas has a substantially stronger sovereignty interest [than New Mexico]"). Weighing these competing interests, we conclude that the district court did not abuse its discretion in determining that "the State of New Mexico has equal or greater interest in litigating this matter than does the State of Texas[.]"

21

{31} The final factor is whether application of Texas law will prevent forum shopping. *Sam*, 2006-NMSC-022, ¶ 22. Ms. Montaño conceded below that it would, and the district court concluded that "forum shopping would be diminished by an application of [Texas law]." *See Newberry v. Ga. Dep't of Indus. & Trade*, 336 S.E.2d 464, 465 (S.C. 1985) (holding that refusal to apply the sued state's law would permit forum shopping). We discern no error in this conclusion by the district court.

{32} In sum, the first and third factors weigh against applying the TTCA, whereas the second and fourth factors weigh in favor of it. Again, *Sam* does not provide guidance on how these factors should be balanced against each other or whether one factor should be weighed differently from the others. Conforming to *Sam*'s approach, however, we start with the notion that New Mexico should recognize Dr. Frezza's immunity as expressed in the TTCA, unless doing so will violate substantial New Mexico policy. Put another way, whether to apply the TTCA depends on the bedrock question guiding the comity analysis: would application of Texas law in this case be contrary to New Mexico's public policies? *See Sam*, 2006-NMSC-022, ¶ 22; *City of Raton*, 611 F. Supp. 2d at 1212 ("Rather than all-or-nothing, a court must assure that, for each claim for which it applies another state's sovereign immunity rules, the application of the other state's rules does not offend the state's public policy in a substantial way.").

{33} We look to the NMTCA for an expression of our public policy as to tort claims against governmental bodies. *See Torres*, 1995-NMSC-025, ¶ 10 ("[I]t is the particular domain of the [L]egislature, as the voice of the people, to make public policy."). In a legislative declaration accompanying the NMTCA, "[t]he legislature recognize[s] the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." NMSA 1978, § 41-4-2(A) (1976). It also recognizes that "the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." *Id.* In enacting the NMTCA, therefore, "the [L]egislature expressed its intent to achieve balance between the public policy supporting compensation of those injured by public employees and the public policy militating in favor of limiting government liability." *Niederstadt v. Town of Carrizozo*, 2008-NMCA-053, ¶ 14, 143 N.M. 786, 182 P.3d 769.

{34} A comparison of the NMTCA and the TTCA reveals that the balance struck by the New Mexico Legislature is substantively different from that struck by Texas legislators. *See* NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2013); Tex. Civ. Prac. & Rem. Code Ann. §§ 101.002 to .109 (1985, as amended through 2013). Both statutes address the extent to which each state has waived its sovereign immunity. *See* § 41-4-2(A) ("[I]t is declared to be the public policy of New Mexico

23

that governmental entities and public employees shall only be liable within the limitations of the [NMTCA]."); § 101.021.  The NMTCA and TTCA are also similar in that they provide for limits on recovery (although the limits are different), *see* § 41-4-19 and § 101.023, and waive immunity for certain injuries arising from the operation of " 'any motor vehicle, aircraft[,] or watercraft.' "  Section 41-4-5; *see* § 101-021(1)(A).

{35}    But there are stark differences between the statutes.  For instance, the TTCA waives sovereign immunity in only three limited cases: "(1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premises defects."  *Paz v. Weir*, 137 F. Supp. 2d 782, 820 (S.D. Tex. 2001); *see* §§ 101.021, .022.  In contrast, New Mexico has waived sovereign immunity for negligent conduct in eight different categories, including medical facilities, health care providers, law enforcement, public utilities, highways/streets, and airports, and does not limit liability to incidents involving motor vehicles or personal or real property.  *See* §§ 41-4-5 to -12.

{36}    The NMTCA and TTCA also differ dramatically in their provisions concerning the liability of individual government employees.  The TTCA does not allow actions against employees in their individual or personal capacity.  Under the TTCA, a suit

24

naming a government employee must be dismissed upon the employee's motion, unless the plaintiff files an amended complaint naming the appropriate governmental unit instead of the employee within thirty days of the employee's motion. Section 101.106(f). There is no such limitation on suits against public employees in the NMTCA. *See* § 41-4-4(A), (B) (addressing waiver of immunity for public employees); *Abalos v. Bernalillo Cnty. Dist. Attorney's Office*, 1987-NMCA-026, ¶ 18, 105 N.M. 554, 734 P.2d 794 ("Each of the eight waivers listed in Sections 41-4-5 to -12 identifies public employees; it follows that one can sue the public employee and the agency or entity for whom the public employee works.").

{37}     Finally, while both statutes have a notice requirement, the requirements function very differently. In Texas, plaintiffs must file a notice within six months of "the day that the incident giving rise to the claim occurred." § 101.101(a). Failure to do so results in dismissal. *See Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 754 (Tex. App. 2014) ("The failure to give notice under [S]ection 101.101 requires dismissal of a suit."). This requirement functions as a statute of repose: it cuts off claims six months after the negligent conduct, regardless of whether the plaintiff's injury had been discovered. *See Putthoff v. Ancrum*, 934 S.W.2d 164, 174 (Tex. App. 1996) ("[T]he discovery rule does not apply to claims made under the [TTCA]."); *Black's Law Dictionary* 1637 (10th ed. 2014) (defining

25

"statute of repose" as "[a] statute barring any suit that is brought after a specified time since the defendant acted . . ., even if this period ends before the plaintiff has suffered a resulting injury").

{38}     In contrast, while the NMTCA requires notice "within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the [NMTCA]," Section 41-4-16(A), New Mexico cases have applied the "discovery rule" to the notice requirement.  Under this rule, the time period for the notice requirement to bring a medical malpractice case under the NMTCA begins to run only when "the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Maestas v. Zager*, 2007-NMSC-003, ¶ 19, 141 N.M. 154, 152 P.3d 141; *Emery v. Univ. of N.M. Med. Ctr.*, 1981-NMCA-059, ¶ 29, 96 N.M. 144, 628 P.2d 1140 (extending the discovery rule to the NMTCA's notice requirement), *abrogated on other grounds by Maestas*, 2007-NMSC-003.  Thus, the NMTCA's notice requirement is much more flexible than that in the TTCA.  *Cf. Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 846, 848 (Tex. App. 2011) (recognizing that "the operation of section 101.101 [when the plaintiff did not discover the injury until after six months had passed] appears harsh and unfair"); *Streetman v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 952 S.W.2d 53, 56 (Tex. App. 1997) (same); *Univ. of Tex.*

26

*Med. Branch at Galveston v. Greenhouse*, 889 S.W.2d 427, 430, 432 (Tex. App. 1994) (same).

{39} We conclude that applying the TTCA here would violate New Mexico public policy by (1) contravening New Mexico's broader waiver of immunity, (2) prohibiting suits against individuals, and (3) imposing a notice requirement substantially more restrictive than that in the NMTCA. *See Sam*, 2006-NMSC-022, ¶ 27 (stating that "[t]o apply [another state's shorter] statute of limitations would violate our own public policy of allowing two years to file suit [under the NMTCA]"). There may also be other ways the statutes differ substantially; we have not conducted an exhaustive comparison of the two statutes. It is sufficient to hold that, to avoid infringing on the public policy expressed in the NMTCA, the immunity extended to Dr. Frezza with regard to the three areas discussed above should be coextensive with the immunity enjoyed by New Mexico governmental agencies and employees. *See id.*

{40} This conclusion is consonant with *Sam*, in which the Court concluded that comity principles required the extension of "a limited grant of immunity to Arizona" where both states had passed similar tort claims acts but with different statutes of limitation, and held that the NMTCA's statute of limitations applied. *Id.* Similarly, in *Hyatt*, the United States Supreme Court affirmed the Nevada Supreme Court's

refusal to apply California law, which provided the Franchise Tax Board with complete immunity, because Nevada law waived immunity for intentional torts. 538 U.S. at 493-94.

{41} As a general matter, it is appropriate to use the NMTCA to provide the contours—or measure—of the immunity Dr. Frezza should enjoy in New Mexico courts. Texas and its employees cannot and should not be treated as purely private litigants for the simple and obvious reason that they are not. Employees of a sister state acting within the scope of their employment do not become purely private citizens when they cross state lines or when they are subjected to the jurisdiction of the courts of another state. *See City of Red Wing v. Ellsworth Cmty. Sch. Dist.*, 617 N.W.2d 602, 607 (Minn. Ct. App. 2000) (holding that it was appropriate to apply Minnesota's municipal tort liability laws as a measure of the extent of a Wisconsin teacher's monetary liability). Using the contours of the NMTCA levels the field and assures that non-New Mexico actors are not provided greater protection than New Mexico provides its employees and governmental agencies. *See Head*, 749 P.2d at 10; *In re Clark's Will*, 1955-NMSC-063, ¶ 7. *Cf. Hansen v. Scott*, 2004 ND 179, ¶ 11, 687 N.W.2d 247, 251 ("We hold the Texas defendants are immune from suit to the same extent the State of North Dakota would grant immunity to its employees under North Dakota law. Applying the same level of immunity does not compromise the

28

public policy of North Dakota."); and *cf.* Ann Woolhandler, *Interstate Sovereign Immunity*, 2006 Sup. Ct. Rev. 249, 291 (stating that one approach employed in comity analyses "involves ignoring defendant-state forum limitation provisions, notice and time limits, and liability and damages limitations, and applying the forum's law of state suability." (footnotes omitted)).

{42} In sum, we affirm the district court with one caveat: the district court's order seems to impose New Mexico law in toto on the proceedings. It is premature to decide that the TTCA is fully displaced. We limit our holding to the three subjects discussed in paragraphs 34-39 of this Opinion. The applicability of other provisions of the NMTCA should be determined by the district court on remand.

**CONCLUSION**

{43} We affirm in part, vacate in part, and remand for proceedings consistent with this Opinion.

{44} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**I CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

**JONATHAN B. SUTIN, Judge (concurring in part and dissenting in part).**

**SUTIN, Judge (concurring in part and dissenting in part).**

{45}    I concur in the majority's resolution of the comity question.  I respectfully dissent in regard to the majority's approbation given to the district court's application of the place-of-the-wrong rule.

**A.    INTRODUCTION:  Dr. Frezza's Points on Appeal**

{46}    Dr. Frezza's points on appeal, aside from the writ of error issue, are that (1) the place-of-the-wrong rule and public policy concerns require that Texas law apply to Ms. Montaño's claims, and (2) the doctrine of comity requires the application of Texas law.  The Texas law to which Dr. Frezza refers is the TTCA.

**1.    The Place-of-the-Wrong Point**

{47}    In his motion to dismiss, Dr. Frezza asserted that the TTCA applied under the doctrine of comity because Texas was the place of the wrong.  He indicates that the district court determined that he was not entitled to immunity from suit under the TTCA because, based on the place-of-the-wrong rule and on principles of comity, New Mexico law applied.  Dr. Frezza erroneously conflates two distinct doctrines.  Further, in arguing the place-of-the-wrong rule, Dr. Frezza relies on New Mexico conflict-of-laws cases having nothing to do with the circumstance of competing foreign state and forum state sovereign immunity laws and interests requiring a

30

comity analysis. *See Torres*, 1995-NMSC-025; *Terrazas*, 2006-NMCA-111; *In re Estate of Gilmore*, 1997-NMCA-103.

{48}    Ms. Montaño buys in to the confusing and erroneous application of the place-of-the-wrong rule. She argues that the place of the wrong is New Mexico and that the district court properly determined that the nexus of facts pled by her raised both a question of choice of law (meaning selecting, pursuant to a conflict-of-laws analysis, the law of one state over another pursuant to a place-of-the-wrong rule analysis) and comity.

{49}    Although they combine the application of the place-of-the-wrong rule with the rule of *lex loci delicti* (*lex loci*), neither Dr. Frezza nor Ms. Montaño says what particular New Mexico law was to be applied under the place-of-the-wrong rule as to Dr. Frezza's immunity defense. In ruling that the place-of-the-wrong rule applied, that the place of the wrong was New Mexico, and that the law to be applied was New Mexico law, the district court also failed to indicate what New Mexico law applied to Dr. Frezza's immunity defense.

**2.    The Comity Point**

{50}    Separately addressing comity, Dr. Frezza says that, in addition to the fact that Texas is the place of the wrong, "principles of comity require the application of Texas law[,]" namely, the immunity provided under the TTCA. He discusses solely the

31

TTCA and the NMTCA in the bout between the immunity provisions within sovereigns' tort claims acts. Dr. Frezza analyzes the four factors in *Sam*, 2006-NMSC-022, ¶¶ 22-28. As to the state-interest factor, Dr. Frezza seems to again insert the place-of-the-wrong and *lex loci* rules into the comity analysis when he argues that "New Mexico's interest is limited by virtue of the fact that all of the alleged negligent acts occurred in Texas[,]" and thus that the TTCA applies under comity. Ms. Montaño's comity analysis, of course, ends with comity not extendable to Texas. Following a *Sam* analysis, the district court denied Dr. Frezza's motion to dismiss insofar as it was based on his comity position that the TTCA applied.

**B.      DISCUSSION:  Misplaced Application of the Place-of-the-Wrong Rule**

**1.      Application of the Place-of-the-Wrong Rule—What Ifs?**

{51}      The choice-of-law, conflict-of-laws analysis path chosen by the district court and the parties begged the unanswered question:  When the determination is made that New Mexico law applies, which New Mexico law is to be applied?  If New Mexico law on sovereign immunity is the law to be applied, that law would be the NMTCA.  If the NMTCA were to be applied, the question necessarily becomes, can the NMTCA apply to claims against a physician for medical negligence when the physician is an employee of a Texas governmental entity and is not an employee of a New Mexico governmental entity?

{52} The answer to the foregoing question is that the NMTCA cannot be applied to that physician. In particular, because Dr. Frezza is not employed by a New Mexico governmental entity, the NMTCA cannot be applied to him. *See* § 41-4-3(B), (C), (F), (H). The upshot is that, given that the NMTCA does not apply to Dr. Frezza and barring the application of the TTCA, his existence as a medical malpractice defendant in a New Mexico lawsuit is such that he would have no New Mexico immunity from suit. Neither the parties nor the district court engaged in any such analysis.

{53} Questions arise: Were the district court to have determined that Texas law instead of New Mexico law applied as to Dr. Frezza's immunity defense and that the TTCA applied, would this then have foreclosed any comity analysis? Would *Torres* have been applicable to override on public policy grounds, the application of the TTCA? *See Torres*, 1995-NMSC-025, ¶¶ 13-14 (holding that, in a choice-of-law and conflict-of-laws, place-of-the-wrong analysis, based on New Mexico's public policy, New Mexico law would control notwithstanding that the place of the wrong was California). Would a *Torres* override on public policy grounds be a decision tantamount to a refusal to extend comity?

{54} It is noteworthy that in *Sam* our Supreme Court noted that this Court in *Sam v. Estate of Sam*, 2004–NMCA–018, ¶ 15, 135 NM 101, 84 P.3d 1066, rev'd by 2006–NMSC–022, employed a choice–of–law, place–of–the–wrong rule

analysis. *See Sam*, 2006–NMSC–022, ¶ 7. Our Supreme Court in *Sam* appears to have purposely chosen to disregard the place–of–the–wrong rule and to stick solely to comity, *see id.* ¶¶ 7–8, although one might infer that, in reversing this Court, our Supreme Court was not disregarding the place–of–the–wrong rule in the case, but was holding that the place–of–the–wrong rule was not applicable. It is also noteworthy that, in *Sam*, the Supreme Court also mentioned that this Court, in *Sam*, 2004–NMCA–018, ¶ 14, also determined that the NMTCA was inapplicable "because [the plaintiff] was not employed by New Mexico and was therefore not covered by [the NMTCA]." *Sam*, 2006–NMSC–022, ¶ 6. We have no indication whether the Supreme Court considered the significance of this Court's determination that the plaintiff in *Sam* was not employed by New Mexico and not covered under the NMTCA.

## 2.   **Misapplied Place-of-the-Wrong Rule**

{55}   The foregoing questions and conundrums aside, the place-of-the-wrong rule had no place in this comity case. None of the choice-of-law, conflict-of-laws, place-of-the-wrong/*lex loci* rule New Mexico cases, including in particular, *Gilmore*, *Terrazas*, and *Torres*, are comity cases. As well, and notably, neither our Supreme Court in *Sam*, nor the United States Supreme Court in *Hyatt* and *Hall*, on which *Sam*

34

relied, engage in a place-of-the-wrong or *lex loci* analysis. *See Hyatt*, 538 U.S. 488; *Hall*, 440 U.S. 410. It was error for the district court to rely on and apply the place-of-the-wrong and lex loci rules in regard to the immunity defense issue in this case. I therefore disagree with the majority's "perceiv[ing] no error in the district court's . . . place-of-the-wrong analysis[,]" *see* Majority Op. ¶ 12, which brings me to *Sam* and comity, and also to the majority's opinion on comity in the present case.

## C.    DISCUSSION:  *Sam*

{56}    *Sam* involved the issue whether New Mexico claimants suing an Arizona government employee in New Mexico were barred by the Arizona Tort Claims Act's one-year statute of limitations, the NMTCA's two-year statute of limitations, or New Mexico's three-year general statute of limitations for tort actions. *Sam*, 2006-NMSC-022, ¶ 7; *Sam*, 2004-NMCA-018, ¶¶ 13-15 (setting out the three statutes of limitations). The action was filed just before three years had run. *Sam*, 2006-NMSC-022, ¶ 3.

{57}    On appeal from the district court decision in *Sam*, this Court determined that the NMTCA did not apply to an Arizona government employee. *Sam*, 2004-NMCA-018, ¶ 13. Citing *Hyatt* and *Hall*, we held that "New Mexico, as the forum state in this case, is not required to recognize Arizona's statute of limitations attaching or the sovereign immunity granted to its public employees." *Sam*, 2004-NMCA-018, ¶ 13.

35

We further held that the NMTCA was inapplicable because the plaintiff "was not a public employee covered under our Tort Claims Act." *Id.* ¶ 14. Declaring that sovereign immunity and public employment were irrelevant to the issues in the case, this Court turned to the place-of-the-wrong rule as applied in *Torres* and held that "because the accident resulting in [the victim's] death occurred in New Mexico, New Mexico's three-year statute of limitations [in NMSA 1978, Section 37-1-8 (1976)] applies to this suit." *Sam*, 2004-NMCA-018, ¶ 15. In a certiorari proceeding, our Supreme Court saw the case differently and reversed this Court. *Sam*, 2006-NMSC-022, ¶¶ 1, 20.

{58} The issue before our Supreme Court in *Sam* was whether the New Mexico district court should, as a matter of comity, recognize the sovereign immunity of a sister state, Arizona. *Id.* ¶ 1. *Sam* stated at the outset that it would discuss "what factors a New Mexico court should consider to determine if comity should be extended." *Id.* ¶ 8. *Sam* analyzed *Hall* and stated that the difference between California and Nevada law as to a cap on damages "was sufficient for California to justify not extending comity." *Sam*, 2006-NMSC-022, ¶ 17. *Sam* declared that "[a]s a general rule, comity should be extended. Only if doing so would undermine New Mexico's own public policy will comity not be extended." *Id.* ¶ 21.

36

{59} In *Sam*, our Supreme Court at the outset indicated that the question was whether, with respect to the plaintiff's claim, the Arizona Tort Claims Act's one-year statute of limitations should be applied under comity, whether the NMTCA's two-year statute of limitations, or whether the New Mexico three-year statute of limitations on common law tort claims, should be applied. *Id.* ¶¶ 1, 3. The Court noted that Arizona and New Mexico both waived sovereign immunity with respect to the plaintiff's claim, but further noted that the waiver of sovereign immunity was "restrained by strict statutes of limitations." *Id.* ¶ 1.

{60} The Court in *Sam* addressed whether it should extend comity to Arizona for application of Arizona's one-year statute of limitations, holding that "we believe that New Mexico should extend a limited grant of immunity to Arizona because both states have done so through tort claims acts. However, we should only extend New Mexico's two-year statute of limitations instead of applying Arizona's one-year statute of limitations." *Id.* ¶ 27. The Court did not *apply* Arizona's tort claims act's one-year statute. *Id.* ¶¶ 20, 27. The Court decided to "*extend* a limited grant of immunity *to* Arizona" and also to "*extend* [the NMTCA's] two-year statute of limitations." *Id.* ¶ 27 (emphasis added). Thus, in regard to Dr. Frezza's immunity defense, in its analysis of whether to extend comity, instead of using the words "apply" or "application" with reference to law, our Supreme Court chose the word

37

"extend"—that is, under the comity analysis, New Mexico would (1) "extend" immunity to Arizona, and (2) at the same time would "extend" the New Mexico statute of limitations "as a matter of comity" or "based on the principles of comity" or "through comity" to Arizona. *Id.* ¶¶ 13, 20, 22, 27.

{61} What I glean from *Sam* is that: (1) the Court *extended comity* to Arizona with respect to Arizona's limited sovereign immunity waiver, leaving Arizona immunity in place and applicable, but did not *extend comity* with respect to Arizona's statute of limitations; and (2) the Court, without expressly saying so, under principles of comity actually applied the NMTCA statute of limitations in place of Arizona's statute of limitations as though the NMTCA statute of limitations was Arizona law. The Court employed the notion "extending" a New Mexico law, namely, NMTCA provisions, presumably because those provisions cannot "apply" to a person who is not an employee of a New Mexico governmental entity.

{62} I am unaware of how New Mexico, by extending comity to Arizona by recognizing the sovereign immunity provision in the Arizona tort claims act, also under or based on comity or comity principles "extends" the NMTCA statute of limitations provisions "*to* Arizona" or "*to* an Arizona public employee." *Sam*, 2006-NMSC-022, ¶¶ 13, 20, 27 (emphasis added). I do not find support in either *Hyatt* or *Hall* for applying the doctrine of comity or its principles by "extending" the NMTCA

38

to the sister state, in effect incorporating the NMTCA into Arizona's tort claims act. I am unaware of any cases outside of *Sam* that resolves comity issues in this manner.

**D.    DISCUSSION:  Following *Sam* Here**

{63}    The majority essentially follows in *Sam*'s footsteps, stating that its "conclusion is consonant with *Sam*[.]"  Majority Op. ¶ 40.  Like in *Sam*, which "extended" the NMTCA's two-year statute of limitations to an Arizona government employee to bar a claim filed in New Mexico against that employee—a person clearly not covered under the NMTCA—the majority "uses" the NMTCA's waiver of immunity to strip Dr. Frezza of immunity, when Dr. Frezza clearly is not covered under the NMTCA. The majority does not use the words "extend" or "extend under comity or comity principles."  The majority states that "it is appropriate to *use* the NMTCA to provide the contours—or measure—of the immunity Dr. Frezza should enjoy," Majority Op. ¶ 41 (emphasis added), and further states that NMTCA's immunity-related provisions "should be *coextensive* with the immunity enjoyed by New Mexico governmental agencies and employees.  Majority Op. ¶ 39 (emphasis added).

{64}    In resorting to the words "extending," "coextensive," and "use," the Court in *Sam* and the majority here employ legal fictions.  *Sam* and the majority have created theories or methodologies by which NMTCA provisions either become a part of or

39

replace a provision in a sister state's tort claims act to bar a claim (as in *Sam*) or to bar a defense (as in the case here).

{65}   It may well be that the legal-fiction approach necessarily must be employed to arrive at a satisfactory result in these sovereign immunity, comity circumstances. Given *Sam*, I cannot fault the majority's approach here. The majority tweaks the *Sam* analysis by discarding the notion of "extending" the NMTCA to the sister state. The majority's "use" and "coextensive" theories are, according to the majority, "consistent" with *Sam*. The majority's word selection perhaps more descriptively suggests what the Court in *Sam* was doing.

{66}   I go along with the majority's resolution albeit there exists no underlying explanation as to how a Texas resident and government employee with TTCA immunity, who is recognized as such when sued in New Mexico, will in essence be treated as a New Mexico resident and New Mexico government employee, consistent with or under the NMTCA, with no immunity, when, in all probability, he will be denied any benefit under the NMTCA and may even receive no TTCA protection. With the understanding that the TTCA violates New Mexico public policy, I go along, given the apparent absence of a better resolution based on any underlying

40

rational support and given the incomplete manner in which the case was developed and handled on Dr. Frezza's motion to dismiss.[3]

{67} Comity policy resides with each state in dealing with sovereignty issues such as those in the case before us. *See Hall*, 440 U.S. at 425-26. State courts exercise reasonable discretion through practical wisdom and general fairness in their judicial-law-making determinations and development. *See* Albert Tate, Jr., *The Law-Making Function of the Judge*, 28 La. L. Rev. 211, 214-17 (1968). This function is appropriate in our policy-driven comity circumstance. Note Judge Tate's poignant view:

> I . . . emphasize again what all lawyers know and what few laymen can deny: That the ordinary and customary operation of our judicial process requires the courts on occasion to create law-rules where needed to decide the case[] and that these law-rules operate with prospective effect to regulate the clashes of similar interests in the future, in much the same manner (although more limited in scope) as does a new statute.

---

[3]I note that the standard of review in *Sam* for a court's analysis under comity is abuse of discretion. *See Sam*, 2006-NMSC-022, ¶ 12. I am unsure why that standard was chosen. One would think that the standard would be de novo, given (1) the claimed error was the district court's denial of a motion to dismiss under Rule 1-012(B)(6), and (2) the underlying question is whether the TTCA violates New Mexico public policy. *See Sam*, 2006-NMSC-022, ¶ 9 (stating that we generally view a denial of a motion to dismiss de novo); *Nat'l Bank of Ariz. v. Moore*, 2005-NMCA-122, ¶¶ 6-7, 138 N.M. 496, 122 P.3d 1265 (indicating that we review de novo whether New Mexico public policy is violated).

41

*Id*. at 217. The import of a legal fiction into a law-rule where needed to decide the case can be appropriate, if done through practical wisdom and general fairness, as long as we recognize and make clear what we are doing and why we are doing it. Although there might be a different solution for the case before us than to employ a legal fiction,[4] I am satisfied that the methodology employed is consistent with reason and fairness and appropriate in this case. That is why I concur in the majority's solution.

_____
**JONATHAN B. SUTIN, Judge**

---

[4]One might offer a possible alternative comity solution by determining that there exist two strong New Mexico public policies militating against granting immunity to physicians sued in New Mexico for medical malpractice: one, lack of immunity under the NMTCA; two, lack of immunity for a non-New Mexico government physician sued for medical malpractice in New Mexico. If the TTCA violates both policies, New Mexico courts will not extend comity to Texas on immunity. The statutes and common law related to medical malpractice actions control. Under those laws, the physician has no New Mexico immunity. It is doubtful that this analysis would "fly" under *Sam*, considering that *Sam* appears to have chosen not to explore public policy underlying the three-year statute of limitations and whether the Arizona statute offended that public policy.

42