I attest to the accuracy and
 integrity of this document
 New Mexico Compilation
 Commission, Santa Fe, NM
 '00'04- 14:02:36 2017.05.02

 IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMSC-015

Filing Date: March 13, 2017

Docket No. S-1-SC-35214

KIMBERLY MONTAÑO,

 Plaintiff-Respondent,

v.

ELDO FREZZA, M.D.,

 Defendant-Petitioner,

and

LOVELACE INSURANCE COMPANY,
a Domestic For-Profit Corporation,

 Defendant.

and

Docket No. S-1-SC-35297

KIMBERLY MONTAÑO,

 Plaintiff-Petitioner,

v.

ELDO FREZZA, M.D.,

 Defendant-Respondent,

and

LOVELACE INSURANCE COMPANY,
a Domestic For-Profit Corporation,

 1
 Defendant.

ORIGINAL PROCEEDING ON CERTIORARI
C. Shannon Bacon, District Judge

Hinkle Shanor LLP
William P. Slattery
Dana Simmons Hardy
Santa Fe, NM

Office of the Attorney General of Texas
John Campbell Barker, Deputy Solicitor General
Lisa A. Bennett, Assistant Solicitor General
Jose L. Valtzar, Assistant Attorney General
Austin, TX

for Petitioner Eldo Frezza, M.D.

Jones, Snead, Wertheim & Clifford, P.A.
Jerry Todd Wertheim
Roxie P. Rawls-De Santiago
Samuel C. Wolf
Santa Fe, NM

for Petitioner Kimberly Montaño

Windle Hood Norton Brittain & Jay, LLP
Joseph L. Hood, Jr.
El Paso, TX

for Amicus Curiae University of Texas System

Atwood, Malone, Turner & Sabin, P.A.
Lee M. Rogers Jr.
Quincy J. Perales
Roswell, NM

for Amici Curiae Texas Medical Liability Trust, et al.

Lorenz Law
Alice Tomlinson Lorenz
Albuquerque, NM

Hull Hendricks LLP

 2
Michael S. Hull
Austin, TX

for Amici Curiae New Mexico Medical Society, et al.

Garcia Ives Nowara, LLC
George L. Bach, Jr.
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

 OPINION

CHÁVEZ, Justice.

{1} Can a New Mexico resident who has been injured by the negligence of a state-
employed Texas surgeon name that surgeon as a defendant in a New Mexico lawsuit when
Texas sovereign immunity laws would require that the lawsuit be dismissed? The answer
to this question implicates principles of interstate comity, an issue that we have previously
examined in Sam v. Sam, 2006-NMSC-022, 139 N.M. 474, 134 P.3d 761. Sam set forth
guidelines for a court to assess when determining whether and to what extent it should
recognize another state’s sovereign immunity as a matter of comity. We initially presume
that comity should be extended because cooperation and respect between states is important.
However, this presumption is overcome and a New Mexico court need not fully extend
comity if the sister state’s law offends New Mexico public policy. In this case, we apply the
Texas provision requiring that the case against the surgeon be dismissed because doing so
does not contravene any strong countervailing New Mexico public policy.

I. BACKGROUND

{2} The background facts are taken from the complaint because when reviewing a motion
to dismiss, we must “accept as true all well-pleaded factual allegations in the complaint and
resolve all doubts in favor of the complaint’s sufficiency.” N.M. Pub. Sch. Ins. Auth. v.
Arthur J. Gallagher & Co., 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342.

{3} Kimberly Montaño, a New Mexico resident, sought bariatric surgery for her obesity
in early 2004. At that time Eldo Frezza, M.D. was the only doctor from whom Montaño
could receive that surgery and still be covered by her insurer. Montaño believed that she
needed the procedure and that she could not afford it without medical insurance coverage.

{4} Dr. Frezza was employed as a bariatric surgeon and professor and served as chief of
bariatric surgery at Texas Tech University Health Sciences Center (Texas Tech Hospital) in
Lubbock, Texas from June 2003 to August 2008. Texas Tech Hospital is a governmental
unit of the State of Texas. See United States v. Tex. Tech Univ., 171 F.3d 279, 289 n.14 (5th

 3
Cir. 1999) (“The Eleventh Amendment cloaks Texas Tech University and Texas Tech
University Health Sciences Center with sovereign immunity as state institutions.”). The
parties do not dispute that Dr. Frezza was acting within the scope of his employment at
Texas Tech Hospital when he provided care to Montaño.

{5} On February 3, 2004, Dr. Frezza performed laparoscopic gastric bypass surgery on
Montaño at Texas Tech Hospital. Montaño began to suffer from abdominal pain at some
unspecified time following the procedure. She returned to see Dr. Frezza several times. He
told her that some discomfort was normal and assured her that everything was ok. Montaño
was also admitted to various medical centers on multiple occasions for severe abdominal
pain.

{6} Six years after the surgery was performed, Montaño was admitted to Covenant
Health System in Lubbock, Texas, where Dr. David Syn performed an
esophagogastroduodenoscopy to determine the cause of her pain. Dr. Syn determined that
the 2004 surgery performed by Dr. Frezza had left a tangled network of sutures in Montaño’s
gastric pouch and down the jejunal limb, which Dr. Syn diagnosed as the cause of her
constant severe abdominal pain. Dr. Syn then performed a revision of the gastric bypass
procedure that had been performed by Dr. Frezza.

{7} In October 2011, Montaño filed a medical malpractice complaint in New Mexico
naming Dr. Frezza as a defendant. Montaño alleged three separate causes of action against
Dr. Frezza, claiming that he committed medical negligence and misled her regarding the
risks of the procedure and the cause of her pain.

{8} Dr. Frezza filed a motion to dismiss Montaño’s complaint under Rule 1-012(B)(6)
NMRA for failure to state a claim upon which relief could be granted.1 Dr. Frezza argued,
in part, that the district court should (1) recognize and apply the Texas Tort Claims Act, Tex.
Civ. Prac. & Rem. Code Ann. §§ 101.001 to -.109 (1985, as amended through 2015) (TTCA)
under principles of comity, and (2) dismiss the suit because Texas law prohibits suits against
individual governmental employees and requires courts to dismiss such suits unless the
plaintiff substitutes the governmental employer of the employee within thirty days of the
motion. TTCA § 101.106(f).

{9} The district court declined to extend comity and denied Dr. Frezza’s motion to
dismiss, finding that it would violate New Mexico public policy to apply Texas law to
Montaño’s claims. The Court of Appeals affirmed on this issue. Montaño v. Frezza,
2015-NMCA-069, ¶¶ 39, 41-42, 352 P.3d 666.

{10} Montaño and Dr. Frezza each petitioned this Court for a writ of certiorari. Dr. Frezza

 1
 Dr. Frezza also filed a separate motion to dismiss, claiming that the district court
lacked personal jurisdiction, an issue which is not before us.

 4
asked us to review whether Texas law should be applied to this case under either New
Mexico choice of law rules or comity. In turn, Montaño asked that we review the scope of
the Court of Appeals’ application of New Mexico law. We granted both petitions.2
Montaño v. Frezza, 2015-NMCERT-006.

II. COMITY

{11} This case implicates Texas’ sovereign immunity, and therefore it might be resolved
through principles of comity. Comity is a doctrine under which a sovereign state chooses
to recognize and apply the law of another sovereign state. Sam, 2006-NMSC-022, ¶ 8. The
United States Supreme Court has long referred to a broad presumption of comity between
the states that reflects states’ unique relationship within the federal system. See Nevada v.
Hall, 440 U.S. 410, 425 (1979) (“In the past, this Court has presumed that the States
intended to adopt policies of broad comity toward one another.”); see also Bank of Augusta
v. Earle, 38 U.S. (13 Pet.) 519, 590 (1839) (“The intimate union of these states, as members
of the same great political family; the deep and vital interests which bind them so closely
together; should lead us, in the absence of proof to the contrary, to presume a greater degree
of comity, and friendship, and kindness towards one another, than we should be authorized
to presume between foreign nations.”).

{12} We have held that comity should be extended unless doing so would undermine New
Mexico’s own public policy. Sam, 2006-NMSC-022, ¶ 21; see also Hall, 440 U.S. at 422
(“[T]he Full Faith and Credit Clause does not require a State to apply another State’s law in
violation of its own legitimate public policy.”). The law of the sister state must not only
contravene New Mexico public policy, but be “sufficiently offensive” to that policy “to
outweigh the principles of comity.” Sam, 2006-NMSC-022, ¶ 19; see also Leszinske v.
Poole, 1990-NMCA-088, ¶¶ 20-35, 110 N.M. 663, 798 P.2d 1049 (concluding that New
Mexico’s public policy of prohibiting a marriage between an uncle and a niece did not
outweigh the principles of comity towards a foreign sovereign and the desirability of uniform
recognition of marriages).

{13} Therefore, public policy lies at the heart of our comity analysis. We have previously
recognized that “it is the particular domain of the legislature, as the voice of the people, to
make public policy,” and courts should interpret public policy “with the understanding that
any misperception of the public mind [by courts] may be corrected shortly by the
legislature.” Torres v. State, 1995-NMSC-025, ¶ 10, 119 N.M. 609, 894 P.2d 386. As a
result, we approach the comity analysis with a healthy respect for our Legislature’s role as
“[t]he predominant voice behind the declaration of [New Mexico] public policy” and with
careful attention to legislative enactments embodying our state’s policy choices. Hartford
Ins. Co. v. Cline, 2006-NMSC-033, ¶ 8, 140 N.M. 16, 139 P.3d 176.

 2
 Because our comity analysis resolves this case, we do not address the other issues
raised by the parties.

 5
{14} Sam is the seminal New Mexico case with respect to the comity issues presented
here. To determine whether it was appropriate to extend comity and fully enforce another
state’s sovereign immunity provisions in that case, we examined four factors: “(1) whether
the forum state would enjoy similar immunity under similar circumstances, (2) whether the
state sued has or is likely to extend immunity to other states, (3) whether the forum state has
a strong interest in litigating the case, and (4) whether extending immunity would prevent
forum shopping.” 2006-NMSC-022, ¶ 22 (citations omitted). These factors are guidelines
that assist courts in answering the ultimate question of whether extending comity would
violate New Mexico public policy. See id.

A. Standard of Review

{15} We apply a mixed standard of review to questions of comity. Id. ¶ 9. While a district
court’s decision to extend comity in a given case is subject to de novo review, we also
analyze any fact-intensive aspects of the district court’s comity analysis under a more
deferential abuse of discretion standard. Id. ¶ 12. We agree with Dr. Frezza that the district
court’s refusal to apply Texas law under principles of comity in this case was not fact-
intensive, but instead focused on comparing the public policies of Texas and New Mexico
as expressed in each state’s tort claims act. Because public policy questions “require[] us to
consider legal concepts in the mix of fact and law and to exercise judgment about the values
that animate legal principles,” we review public policy determinations de novo. State v.
Attaway, 1994-NMSC-011, ¶ 6, 117 N.M. 141, 870 P.2d 103 (internal quotation marks and
citations omitted), holding modified on other grounds by State v. Lopez, 2005-NMSC-018,
¶¶ 17-18, 138 N.M. 9, 116 P.3d 80; see also Ponder v. State Farm Mut. Auto. Ins. Co.,
2000-NMSC-033, ¶ 6, 129 N.M. 698, 12 P.3d 960 (stating that “matters of public policy with
broad precedential value” are properly subject to de novo review (internal quotation marks
and citations omitted)). We now explain the factors set forth in Sam and apply them to this
case.

B. The First Sam Factor: Comparing the Immunity Provisions of Each State

{16} Under the first Sam factor, we consider “whether the forum state would enjoy similar
immunity under similar circumstances.” 2006-NMSC-022, ¶ 22. We make this
determination by examining whether “a similar action brought against a New Mexico entity
or government employee would be barred” under the New Mexico Tort Claims Act, NMSA
1978, §§ 41-4-1 to -30 (1976, as amended through 2015) (NMTCA). Sam, 2006-NMSC-
022, ¶¶ 22-23; see also Franchise Tax Bd. of Cal. v. Hyatt, 538 U.S. 488, 499 (2003)
(concluding that a state may rely on the contours of its own sovereign immunity from suit
as a benchmark for its comity analysis). If we determine that a similar action would not be
barred under the NMTCA, then we must look to the other three Sam factors and consider the
public policy implications of extending comity in this case. Thus, the first Sam factor serves
as a threshold inquiry because if the result would not be different under New Mexico law,
then it would not offend New Mexico public policy to apply the other state’s law, and there
is no need to examine the other Sam factors.

 6
{17} Further, the Full Faith and Credit Clause of the United States Constitution, U.S.
Const. art. IV, § 1, requires us to recognize the sovereign immunity of other states to the
extent that sovereign immunity has been retained by this state under our law. See Franchise
Tax Bd. of Cal. v. Hyatt, ___ U.S. ___, ___, 136 S. Ct. 1277, 1282-83 (2016). Otherwise we
would be espousing an impermissible “special and discriminatory rule[]” reflecting a “policy
of hostility to the public Acts of a sister State.” Id. (internal quotation marks and citations
omitted). Therefore we must, at a minimum, recognize any immunity retained by Texas
under the TTCA that is not inconsistent with the immunity retained by New Mexico under
the NMTCA.

{18} Dr. Frezza’s motion to dismiss raised TTCA Section 101.106(f) as the only basis for
dismissing Montaño’s suit. TTCA Section 101.106(f) clarifies that a suit filed against a
governmental employee “based on conduct within the general scope of that employee’s
employment . . . is considered to be against the employee in the employee’s official capacity
only.” See also TTCA § 101.026 (stating that a governmental employee’s individual
immunity from a tort claim is not affected by the TTCA). Further, on the employee’s
motion, the suit against the employee must be dismissed within thirty days unless the
plaintiff amends his or her pleadings to dismiss the employee and name the governmental
unit as a substitute defendant. TTCA § 101.106(f).

{19} Montaño has not disputed that Dr. Frezza was acting within the scope of his
employment when he provided care to her. Montaño did not amend her pleadings within
thirty days of January 13, 2012, when Dr. Frezza filed his motion to dismiss. Because TTCA
Section 101.106(f) applies to this case, Texas courts would have dismissed the suit against
Dr. Frezza. See Franka v. Velasquez, 332 S.W.3d 367, 385 (Tex. 2011) (dismissing a suit
under TTCA Section 101.106(f) that was brought against state-employed physicians, even
regarding claims for which the governmental unit had not waived its immunity).

{20} Applying New Mexico law to this case would not require the dismissal of Dr. Frezza
as a defendant. Under the NMTCA, if Dr. Frezza were employed by a New Mexico
governmental employer, Montaño’s suit against Dr. Frezza could proceed because individual
governmental employees can be named as defendants. See § 41-4-2(A) (establishing that
“governmental entities and public employees” can be held liable within the limitations set
forth by the NMTCA); § 41-4-10 (stating that health care providers can be liable under the
NMTCA for injuries caused by negligence in the provision of health care services). Because
immunity under New Mexico law would not be similar under similar circumstances, we must
examine the other Sam factors to determine whether the application of Texas law in this case
would offend New Mexico public policy.

C. The Second Sam Factor: Gauging Past Cooperation Between the States

{21} Under the second Sam factor, we determine whether Texas “has or is likely to extend
immunity to other states.” 2006-NMSC-022, ¶ 22. This factor requires us to assess the
degree of reciprocity and cooperation between Texas and other states, New Mexico in

 7
particular. Cf. Hilton v. Guyot, 159 U.S. 113, 210 (1895) (noting the lack of reciprocity
indicated by France’s refusal to recognize foreign judgments as a factor weighing against
extending comity to a judgment from a French court). In the absence of any indication that
Texas has refused to grant immunity to New Mexico or any other state under circumstances
that are similar to this case, we assume that Texas would extend comity to New Mexico to
encourage future cooperation and reciprocity between our states. See Sam, 2006-NMSC-
022, ¶ 24.

{22} Several recent cases indicate that Texas has acted in a spirit of reciprocity and
cooperation toward New Mexico and other states in similar circumstances. First, in New
Mexico State University v. Winfrey, a Texas plaintiff brought a claim alleging negligent
operation of a weather balloon against New Mexico State University and a university
employee. 2011 WL 3557239, at *1 (Tex. App., Aug. 11, 2011).3 The Winfrey court
compared the jurisdiction and venue provisions of the NMTCA and the TTCA and
determined that the provisions were similar, such that enforcement of the NMTCA venue
provision through comity would not violate Texas public policy. Id. at *2. The court then
applied the NMTCA provision and dismissed the suit for lack of jurisdiction. Id. at *3-4;
see also New Mexico v. Caudle, 108 S.W.3d 319, 320-22 (Tex. App. 2002) (declining to
determine the constitutionality of a New Mexico statute under principles of comity).

{23} Second, Texas appellate courts have previously extended comity and applied tort
claims provisions from other jurisdictions that differed from the TTCA’s provisions. For
instance, in Greenwell v. Davis, the Texas Court of Appeals extended sovereign immunity
to an Arkansas city by applying Arkansas law to a tort action arising from a car accident in
the border city of Texarkana, Texas. 180 S.W.3d 287, 290, 296-99 (Tex. App. 2005).
Arkansas law capped liability to the extent that the governmental unit was covered by
liability insurance, while Texas law capped liability for personal injuries at $250,000. Id.
at 291-92. If Arkansas law had applied in that case, the plaintiff’s remedy would have been
capped at $20,000, which was less than one-tenth of the cap under Texas law. Id. at 292.
The court acknowledged this substantial difference in potential recoveries, but nonetheless
held that it would not offend Texas public policy to apply the Arkansas immunity provision.
Id. at 298; see also Hawsey v. La. Dep’t of Soc. Servs., 934 S.W.2d 723, 726-27 (Tex. App.
1996) (applying under comity a mandatory venue provision for suits against the sovereign
under Louisiana law that differed from the Texas venue provision).

{24} Montaño does not cite a single Texas authority suggesting that Texas has been
uncooperative with New Mexico or other states under circumstances similar to this case.
Instead, she invites us to analyze this factor by considering only whether Texas would
extend comity in situations where it would be contrary to Texas public policy to do so. We

 3
 Although Winfrey was a memorandum opinion, we treat Winfrey as precedential
authority because memorandum opinions in civil cases issued after 2003 have precedential
value in Texas. See Tex. R. App. Proc. 47.2(c), cmt. (2008).

 8
decline Montaño’s invitation because the primary concern of the second Sam factor is the
existing history of cooperation and mutuality, or lack thereof, between Texas and other
states, which her proposed approach would not address. See 2006-NMSC-022, ¶ 19
(“Comity refers to the spirit of cooperation in which a domestic tribunal approaches the
resolution of cases touching the laws and interests of other sovereign states.” (internal
quotation marks and citations omitted)); see also K.D.F. v. Rex, 878 S.W.2d 589, 593 (Tex.
1994) (“Comity is a doctrine grounded in cooperation and mutuality.”). Because there is no
indication that Texas has adopted an uncooperative attitude towards other states, we
conclude that there is no public policy problem with extending comity to Texas under this
factor.

D. The Third Sam Factor: Balancing the States’ Interests

{25} Under the third Sam factor, we consider whether New Mexico has a strong interest
in litigating this case under New Mexico law by comparing the policy interests of New
Mexico and Texas. See 2006-NMSC-022, ¶¶ 22, 26. If New Mexico has a stronger interest
in the case, then it may violate our public policy to defer to Texas’ laws. However, if the
interests of Texas are greater than New Mexico’s, extending comity would not violate our
public policy. The dissent contends that our analysis of the third Sam factor should be
guided by the United States Supreme Court’s decision to abandon a balancing approach.
Dissenting op. ¶ 41. We decline to do so because the United States Supreme Court’s
abandonment of the balancing approach applies only to that Court’s analysis of whether a
state’s choice-of-law decision complies with the Full Faith and Credit Clause. Our comity
analysis is a broader inquiry meant to honor principles of interstate harmony and a “spirit
of cooperation” between states. Sam, 2006-NMSC-022, ¶ 19 (internal quotation marks and
citation omitted). Here the district court held that “the State of New Mexico has equal or
greater interest in litigating this matter than does the State of Texas.” We disagree.

{26} Texas has a strong public policy interest in applying uniform standards of liability
and immunity to the conduct of state-employed physicians who provide medical care at
state-run facilities. New Mexico courts have recognized an analogous public policy interest
with respect to this state’s governmental employees. In Wittkowski v. State, the Court of
Appeals held that New Mexico public policy required the application of New Mexico law
to a suit alleging various breaches of duty by officials of the New Mexico State Police and
the New Mexico Department of Corrections that allegedly caused the shooting of a liquor
store employee in Colorado. 1985-NMCA-066, ¶¶ 3-5, 8, 103 N.M. 526, 710 P.2d 93,
overruled on other grounds by Silva v. State, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 745
P.2d 380. The Wittkowski Court reasoned that because New Mexico had established the
standard of care governing the conduct of police officers and correctional officials through
the NMTCA and decisional law, New Mexico had a strong public policy interest in
determining “the existence of duties and immunities on the part of New Mexico officials”
sued for torts allegedly committed within the scope of their employment. 1985-NMCA-066,
¶ 8. Otherwise, uniformity in the law would be jeopardized because identical conduct by
New Mexico officials could be deemed “actionable if the final act occurred in one state but

 9
not actionable if it occurred in another.” Id. In Torres, we adopted the Wittkowski Court’s
description of New Mexico’s strong public policy interest for applying New Mexico law to
tort actions against governmental officials for alleged acts or omissions occurring in New
Mexico. Torres, 1995-NMSC-025, ¶ 14. We held in Torres that New Mexico law applied
to a suit alleging breaches of duty by the Albuquerque Police Department relating to police
conduct in New Mexico that allegedly caused two shootings in California. Id. ¶¶ 7, 14.

{27} The Court of Appeals later examined similar policy concerns with respect to medical
negligence claims. In Zavala v. El Paso County Hospital District, a young girl’s family
brought suit alleging medical malpractice and wrongful death by two Texas doctors and a
Texas state-run hospital where she had been transferred. 2007-NMCA-149, ¶¶ 1-3, 143
N.M. 36, 172 P.3d 173. Although the Court of Appeals in Zavala did not need to apply a
comity analysis, id. ¶ 40, the Court of Appeals examined the competing policy interests of
New Mexico and Texas in adjudicating that case, id. ¶¶ 30-35, and determined that Texas
had a “substantially stronger sovereignty interest” in resolving the case because the hospital
was “not only located in Texas but it [was] also an entity of the government of the State of
Texas,” id. ¶ 34. An almost identical policy interest is at stake in this case because
Montaño’s lawsuit against Dr. Frezza relates to his conduct as a Texas state employee
practicing medicine at a Texas state hospital.4

{28} Further, although our analysis under the first Sam factor revealed that this lawsuit
could be brought under the NMTCA but not the TTCA, we are not convinced that the
relevant distinctions between the laws indicate any material differences in public policy
between the two states. Under both the NMTCA and the TTCA, a governmental employee
will not bear the cost of defending or paying damages for a lawsuit arising from negligence
committed by that employee within the scope of his or her duties. Texas has chosen to
forbid a lawsuit naming an individual employee, but it still holds the governmental employer
liable for its employee’s negligence. TTCA §§ 101.106(f), 101.021. New Mexico instead
allows a governmental employee to be named in a lawsuit, but it requires the governmental
employer to provide a defense and pay damages for the negligence of both current and
former employees. See NMTCA § 41-4-4(B)(1), (C)-(D), (G)-(H).

{29} The two laws have a similar effect. Both provisions are intended to place on the
governmental employer the responsibility for defending and ultimately paying for lawsuits
arising from alleged negligence by governmental employees acting within the scope of their
duties. TTCA Section 101.106(f) is essentially an indemnity provision because it requires
the State of Texas to defend against and pay for any negligence claims against governmental
employees acting within the general scope of their employment. The TTCA achieves this

 4
 We are unpersuaded by Montaño’s attempt to distinguish the present case from
Zavala by claiming that the plaintiffs in that case “made their own free decision to seek
medical care in Texas” and that the circumstances of this case did not involve a similarly
voluntary decision by Montaño to subject herself to surgery in Texas.

 10
goal of indemnity by mandating that the governmental entity be named in the suit as the real
party in interest. The TTCA does not contain any other indemnity provision. The NMTCA
likewise expresses the same policy with respect to defense and indemnification of suits
against employees acting within the scope of their duties, with the exception that the
NMTCA allows an employee to be named as a nominal defendant despite the governmental
unit being the real party in interest. See Teco Invs., Inc. v. Taxation & Revenue Dep’t,
1998-NMCA-055, ¶ 12, 125 N.M. 103, 957 P.2d 532 (concluding that when a party has
agreed to indemnify another from the liability upon which an action is grounded, the
indemnifying party is the real party in interest). Thus, although the laws achieve the same
ends through divergent means, we cannot say that the purpose or effect of TTCA Section
101.106(f) differs materially from the policies requiring defense and indemnity of public
employees in the NMTCA. See Loucks v. Standard Oil Co. of N.Y., 120 N.E. 198, 201 (N.Y.
1918) (Cardozo, J.) (“Our own scheme of legislation may be different. . . . We are not so
provincial as to say that every solution of a problem is wrong because we deal with it
otherwise at home.”).

{30} Montaño contends that Texas law should not bar her claims against Dr. Frezza if
TTCA Section 101.106(f) is really just an indemnity provision similar to provisions in the
NMTCA because the State of Texas has already provided a defense for Dr. Frezza. She
argues that “Texas could disregard the nominal distinction of having an employee be the
named defendant” by not enforcing the TTCA provision. However, that decision ultimately
rests with the State of Texas and not this Court. The TTCA represents how the Texas
Legislature has chosen to protect that state’s employees and preserve their immunity from
suit. Importantly, we cannot say that this choice represents a policy inimical to the
NMTCA’s policies.

{31} Access to cross-border health care for individuals living in rural parts of New Mexico
is an additional consideration that tempers New Mexico’s interest in applying its law to this
case. Numerous amici have informed this Court about the relative shortage of doctors,
particularly specialists, in certain rural areas of New Mexico and the important role that
state-operated health care facilities in Texas play in filling those gaps in care for many
residents of the southern and eastern portions of our state. Could failing to extend comity
to Texas in this case diminish the availability of important medical services to those New
Mexico residents? The record before us here is inadequate, and the arguments are too
speculative, for us to draw any definitive conclusions. However, we do not consider it
overly speculative to conclude that extending comity to Texas in this case will positively
serve New Mexico’s public policy interests by encouraging the continuing cooperation of
Texas and New Mexico in maintaining cross-border care networks. See Tarango v.
Pastrana, 1980-NMCA-110, ¶ 13, 94 N.M. 727, 616 P.2d 440 (noting that the public interest
in maintaining access to cross-border medical services is promoted by applying the law
where such services were rendered); see also Wright v. Yackley, 459 F.2d 287, 290 (9th Cir.
1972) (“Medical services in particular should not be proscribed by the doctor’s concerns as
to where the patient may carry the consequences of his treatment and in what distant lands
he may be called upon to defend it.”); Simmons v. State, 670 P.2d 1372, 1385-86 (Mont.

 11
1983) (“Principles of comity, as well as due process, require that we not subject Oregon to
the possibility of lawsuits in every state served by its medical testing facilities. To do
otherwise could conceivably jeopardize the availability of this service.”).

{32} New Mexico’s interest in applying New Mexico law to this case derives from our
public policy of “providing compensation or access to the courts to residents of the state.”
Sam, 2006-NMSC-022, ¶ 26. For example, the purpose of the New Mexico Medical
Malpractice Act, NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2015), is to
“promote the health and welfare of the people of New Mexico,” see § 41-5-2, by ensuring
that individuals receive adequate compensation for injuries caused by medical negligence,
see §§ 41-5-1 to -29. Additionally, the NMTCA is designed to circumvent “the inherently
unfair and inequitable results which occur in the strict application of the doctrine of
sovereign immunity,” § 41-4-2(A), and seeks to hold accountable governmental employees,
including physicians, for negligent acts that cause injury, § 41-4-10. These concerns are not
negligible. However, as we clarified in Sam, the interest in providing redress to injured New
Mexico citizens under our law is “tempered by the concept of comity” and the NMTCA’s
public policy goal of limiting the manner in which claims can be brought against the
government. 2006-NMSC-022, ¶ 25; see also § 41-4-2(A) (“[I]t is declared to be the public
policy of New Mexico that governmental entities and public employees shall only be liable
within the limitations of the [NMTCA].” (emphasis added)).

{33} Further, the New Mexico public policy interests identified in Sam have limited
application here. Sam involved alleged negligence by a New Mexico resident that caused
an accident in New Mexico which harmed another New Mexico resident. 2006-NMSC-022,
¶ 2. Arizona’s interest in the case was ancillary to the allegedly negligent conduct at the
core of that case—the defendant happened to be an Arizona state employee driving an
Arizona-owned vehicle in his official capacity at the time of the accident. See id.; see also
Ramsden v. Illinois, 695 S.W.2d 457, 459 (Mo. 1985) (en banc) (“Illinois did not enter
Missouri to conduct an activity, but merely cooperated in a national program to make
psychology internships available. . . . The only interest Missouri has in this controversy is
the fact that [the plaintiff] lived here when he filed suit.”); cf. Ehrlich-Bober & Co. v. Univ.
of Houston, 404 N.E.2d 726, 731 (N.Y. 1980) (explaining that the extension of comity was
not warranted where the financial transactions at issue in that case were “centered” in the
forum state). Accordingly, in Sam we determined that it was appropriate to recognize
Arizona’s immunity in a more limited fashion consistent with the contours of New Mexico’s
own policy choices after weighing New Mexico’s interests in providing redress to our
citizens and regulating negligent conduct within our borders against Arizona’s sole interest
of protecting its sovereign immunity. See 2006-NMSC-022, ¶ 27. By contrast, this case,
much like Wittkowski, Torres, and Zavala, turns upon a Texas state employee’s acts or
omissions that were alleged to have occurred entirely within Texas. Thus, Texas has a
comparatively strong interest in determining the duties and immunities of that employee and
applying a uniform standard of liability to identical conduct by Texas employees performing
their duties in Texas. See Torres, 1995-NMSC-025, ¶ 14; see also Wittkowski, 1985-
NMCA-066, ¶ 8; In re Estate of Gilmore v. Gilmore, 1997-NMCA-103, ¶ 19, 124 N.M. 119,

 12
946 P.2d 1130 (“The determining factor [in Torres] was that the police officers involved
were New Mexico officers acting in New Mexico, so that New Mexico had a particular
interest in the standard of conduct imposed on the officers.”).

{34} Our analysis of this factor does not reveal a strong public policy rationale for denying
comity to Texas. The substantial public policy interests in applying Texas law to this case
are not outweighed by New Mexico’s interest in providing a forum for New Mexicans who
seek redress for medical negligence.

E. The Fourth Sam Factor: Assessing the Risk of Forum Shopping

{35} Under the fourth Sam factor, we measure the degree to which extending immunity
to Dr. Frezza in this case under the contours of Texas law would prevent forum shopping.
See 2006-NMSC-022, ¶ 22. Montaño argues that our analysis of the fourth factor should
only examine whether an individual plaintiff has engaged in improper forum shopping by
attempting to bring suit in New Mexico despite having no basis for doing so. We pause to
clarify that there is no indication that Montaño is engaged in the sort of improper forum
shopping that she describes. However, our inquiry under this factor does not focus on
whether a specific plaintiff is forum shopping, but is instead aimed at whether plaintiffs in
general would be encouraged to bring claims in New Mexico that could not otherwise be
brought in Texas. See id. ¶ 28; see also Newberry v. Ga. Dep’t of Indus. & Trade, 336
S.E.2d 464, 465 (S.C. 1985) (concluding that failing to recognize Georgia’s immunity to the
extent prescribed under Georgia law would lead to forum shopping because “[a]lthough suit
in tort could not be brought in Georgia, a plaintiff could circumvent Georgia’s immunity by
bringing suit in this State”). It is self-evident that this factor will always favor extending
comity to some extent because uniform application of laws across the states will eliminate
the incentive for plaintiffs to bring a cause of action in one state and not another. It is
therefore only a question of degree. See, e.g., Sam, 2006-NMSC-022, ¶ 28 (concluding that
applying a statute of limitations consistent with the NMTCA rather than Arizona law would
“prevent forum shopping to some degree” but “not completely eliminate [it]”).

{36} With these considerations in mind, we conclude that failing to extend any immunity
to Texas in this case could encourage forum shopping by allowing plaintiffs to name Texas
state employees in lawsuits in New Mexico when plaintiffs could not do so in Texas. Thus,
extending comity to Texas by dismissing Dr. Frezza from this suit under the TTCA would
prevent forum shopping to some degree by promoting the uniform application of Texas’
waiver of sovereign immunity.

III. CONCLUSION

{37} We have not identified a strong public policy weighing against the presumption of
comity in this case. Accordingly, we extend comity to Texas and apply TTCA Section
101.106(f). We reverse the Court of Appeals and the district court. The district court shall
dismiss Montaño’s suit without prejudice because Montaño failed to amend her pleadings

 13
and name the proper party within thirty days of Dr. Frezza’s motion to dismiss.

{38} IT IS SO ORDERED.

 ____________________________________
 EDWARD L. CHÁVEZ, Justice

WE CONCUR:

____________________________________
PETRA JIMENEZ MAES, Justice

____________________________________
JUDITH K. NAKAMURA, Justice

____________________________________
LINDA M. VANZI, Judge
Sitting by designation

BARBARA J. VIGIL, Justice, concurring in part and dissenting in part

VIGIL, Justice (concurring in part and dissenting in part).

{39} I agree with the majority’s analysis of three out of the four factors of Sam,
2006-NMSC-022, ¶ 22. I write separately to address the third factor, “whether the forum
state has a strong interest in litigating the case.” Id. (emphasis added). New Mexico has a
strong interest in enabling its residents to recover for medical negligence, particularly those
who have limited options. Because my analysis of the third factor leads me to a different
result for this case, I respectfully dissent.

I. COMITY AND THE THIRD FACTOR OF SAM

{40} The majority’s analysis of the interests of Texas under the third factor of Sam departs
from the central question of whether extending comity would undermine New Mexico policy.
Id. ¶ 21 (“Only if doing so would undermine New Mexico’s own public policy will comity
not be extended.”). The third factor requires us to analyze the interests of New Mexico, not
the state to be extended comity. See id. ¶ 22.

{41} I cannot join the majority’s expansion of the third factor into a balancing test between
the interests of New Mexico and its sister state, Texas. See maj. op. ¶ 25 (“[I]f the interests
of Texas are greater than New Mexico’s, extending comity would not violate our public
policy.”). Though the United States Supreme Court historically used a balancing-of-interests
approach to resolve similar conflicts of law, it has since abandoned this approach. See Hyatt,
538 U.S. at 496 (“[W]e abandoned the balancing-of-interests approach . . . . We thus have

 14
held that a State need not substitute the statutes of other states for its own statutes dealing
with a subject matter concerning which it is competent to legislate.” (internal quotation
marks and citations omitted)). The majority returns to the balancing approach by weighing
the interests of Texas against the interests of New Mexico and goes so far as to suggest that
failing to extend comity will tread upon the sovereignty of Texas. See Hyatt, ___ U.S. at ___,
136 S. Ct. at 1283 (quoting Hyatt, 538 U.S. at 496) (“[W]e need not, and do not, intend to
return to a complex ‘balancing-of-interests approach to conflicts of law under the Full Faith
and Credit Clause.’ ”). See maj. op. ¶ 27. The third factor does not require us to determine
whether the interests of Texas are greater than New Mexico’s, maj. op. ¶ 25, but rather
whether extending comity would serve the interests of New Mexico. Sam, 2006-NMSC-022,
¶¶ 21, 22.

{42} The majority’s analysis of the third factor begins with the conclusion that Texas has
a strong interest in applying uniform standards of liability and immunity to the conduct of
state employees. Maj. op. ¶ 26. While I agree with the majority that Texas could claim an
interest in litigating the case, comity requires no such inquiry. See Hyatt, 538 U.S. at 495-96
(abandoning the balancing approach). Moreover, the majority’s reliance on Wittkowski and
Torres is misplaced. See Wittkowski, 1985-NMCA-066, ¶ 8 (holding that “[p]ublic policy
dictates that [the forum state] determine the existence of duties and immunities on the part
of [the forum state’s] officials”); see also Torres, 1995-NMSC-025, ¶ 14 (holding that New
Mexico law should govern the duties of New Mexico law enforcement personnel). Neither
of those cases addresses the central question of the comity analysis: whether applying the
sister state’s law would undermine New Mexico policy. Sam, 2006-NMSC-022, ¶ 21. For
the purposes of deciding whether to extend comity, the strongest source of New Mexico
policy is our legislation itself. See Hyatt, 538 U.S. at 499 (“The Nevada Supreme Court
sensitively applied principles of comity . . . relying on the contours of Nevada’s own
sovereign immunity from suit as a benchmark for its analysis.”).

{43} Our analysis of the third factor cannot begin with the conclusion that Texas
sovereignty is at stake. See maj. op. ¶¶ 26-27. Cf. Zavala, 2007-NMCA-149, ¶ 34 (describing
Texas’s sovereignty interest as a basis for withholding personal jurisdiction over a Texas
hospital). Suits against sister states “necessarily implicate[] the power and authority of both
sovereigns.” Hyatt, 538 U.S. at 498 (internal quotation marks and citation omitted); see also
Hall, 440 U.S. at 416, 426-27 (holding that precluding a forum state from applying its own
laws “would constitute the real intrusion on the sovereignty of the States—and the power of
the people—in our Union”).

{44} In sum, the majority’s balancing approach departs from the central question in Sam:
whether extending comity would undermine New Mexico’s interests. 2006-NMSC-022, ¶
21. Such an approach erodes the sovereignty of New Mexico and the authority of the New
Mexico Legislature. See Hall, 440 U.S. at 426-27; Hyatt, 538 U.S. at 494-95. The proper
focus of the third factor is New Mexico’s interests. Sam, 2006-NMSC-022, ¶¶ 21-22.

II. NEW MEXICO’S INTERESTS IN LITIGATING THE CASE

 15
{45} To determine whether New Mexico has a strong interest in litigating the case, we
must begin with the presumption that extending comity will not violate New Mexico public
policy. Id. ¶ 16; see, e.g., Leszinske, 1990-NMCA-088, ¶ 35 (holding, despite New Mexico’s
public policy against incest, that it was not error for the district court to recognize a marriage
between an uncle and his niece). Then, we must examine the sister state’s law to see whether
it “offends a sufficiently strong public policy to outweigh the purposes served by the rule of
comity.” Sam, 2006-NMSC-022, ¶ 21 (internal quotation marks and citation omitted). The
best estimation of New Mexico’s interests in litigating the case are the policies identified by
the New Mexico Legislature. See Hartford Ins. Co., 2006-NMSC-033, ¶ 8 (describing public
policy as the “particular domain of the [L]egislature” (internal quotation marks and citation
omitted)). This requires a comparison of the relevant provisions of the TTCA with the
policies embodied in the NMTCA. See Estate of Gilmore, 1997-NMCA-103, ¶ 30 (“[I]n
assessing a state’s interest in the application of the law, we cannot assume that the state is
result-oriented. We presume that a state is not interested in the most favorable result for its
residents, but only that each state wants the ‘just’ result for its residents, with justness
measured by the laws of that state.”).

{46} The NMTCA and the TTCA are both limited waivers of sovereign immunity. See
TTCA § 101.025(a) (“Sovereign immunity to suit is waived and abolished to the extent of
liability created by this chapter.”); see also § 41-4-2(A) (“[G]overnmental entities and public
employees shall only be liable within the limitations of the Tort Claims Act and in
accordance with the principles established in that act.”). Both statutes balance the competing
policy goals of limiting government liability and compensating those who are injured by
government employees. Frezza, 2015-NMCA-069, ¶¶ 33-34. In light of these shared
objectives, not every aspect of the TTCA will be incompatible with the NMTCA. However,
when “[a] comparison of the NMTCA and the TTCA reveals that the balance struck by the
New Mexico Legislature is substantively different from that struck by Texas legislators,”
Frezza, 2015-NMCA-069, ¶ 34, New Mexico has a strong interest in litigating the case. See
Hyatt, ___ U.S. at ___, 136 S. Ct. at 1281 (stating that a state is not required “to substitute
for its own statute . . . the statute of another State reflecting a conflicting and opposed
policy.” (internal quotation marks and citation omitted)).

{47} New Mexico has a strong interest in applying its own waiver of sovereign immunity,
which is significantly broader than that of Texas. See § 41-4-10; see also TTCA § 101.021.
In Hyatt, the United States Supreme Court affirmed the Nevada Supreme Court’s decision
to apply Nevada’s broader waiver of immunity to an intentional tort claim against California.
538 U.S. at 494-95; see id. at 494 (holding that Nevada was “undoubtedly ‘competent to
legislate’ with respect to the subject matter of the alleged intentional torts here, which, it
[was] claimed, [had] injured one of its citizens within its borders”). The New Mexico
Legislature has chosen to waive immunity for the negligence of public employees acting
within the scope of their duties of providing health services. Section 41-4-10. In contrast, in
the medical malpractice context, the Texas waiver applies only in cases where the harm was
caused by the misuse of tangible personal property. See TTCA § 101.021(2); see also Tex.
Tech. Univ. Health Sci. Ctr. v. Jackson, 354 S.W.3d 879, 884 (Tex. App. 2011) (“A plaintiff

 16
must show that the tangible personal property was the instrumentality of harm.” (citations
omitted)). The Texas waiver does not extend to claims alleging lack of informed consent,
Kamel v. Univ. of Tex. Health Sci. Ctr. at Hous., 333 S.W.3d 676, 686 (Tex. App. 2010), or
errors in medical judgment. See Miers v. Tex. A & M Univ. Sys. Health Sci. Ctr., 311 S.W.3d
577, 579-80 (Tex. App. 2009) (holding that a dentist’s negligent decision to pull teeth did
not fall under the waiver because he correctly used the instruments to remove them).
Applying the TTCA’s more limited waiver would undermine New Mexico’s strong policy
of waiving immunity for the negligence of public employees. See Sam, 2006-NMSC-022,
¶ 21.

{48} Likewise, New Mexico has a strong interest in applying its own notice provisions,
which are more lenient than those of Texas. See § 41-4-16(A); see also TTCA § 101.101(a),
(c). Texas requires the plaintiff to give notice of the claim no later than six months after the
date of the incident giving rise to the claim. See TTCA § 101.101(a). While the NMTCA
requires the plaintiff to give notice of the suit within ninety days and is technically stricter
on its face, see § 41-4-16(A), the statutory period is tolled until the plaintiff knows or with
reasonable diligence should have known of the injury and its cause. Maestas v. Zager, 2007-
NMSC-003, ¶ 22, 141 N.M. 154, 152 P.3d 141. By contrast, the “discovery rule” does not
apply to the TTCA. See Timmons v. Univ. Med. Ctr., 331 S.W.3d 840, 842-43, 847-48 (Tex.
App. 2011). Texas’s notice requirement has a harsher effect than New Mexico’s. See id. The
harsher notice requirement is sufficiently offensive to New Mexico public policy to
overcome the presumption of comity. See Sam, 2006-NMSC-022, ¶ 27 (declining to
recognize Arizona’s harsher statute of limitations).

{49} I agree with the majority that there is no material difference between the TTCA’s
prohibition of suits against individual employees and the NMTCA, which permits suits
against an individual but requires the government to defend and pay damages for the
individual’s negligence. Compare TTCA § 101.026 (“To the extent an employee has
individual immunity from a tort claim for damages, it is not affected by this chapter.”), and
TTCA § 101.102(b) (“The pleadings of the suit must name as defendant the governmental
unit against which liability is to be established.”), with Section 41-4-4(B)(1) (requiring the
governmental entity to provide a defense, including costs and attorneys fees, for any tort
committed by an employee acting within the scope of duty). I would therefore recognize
these provisions in the spirit of comity. However, I would decline to extend comity to the
harsh procedural mechanism at issue in this case. See TTCA § 101.106(f). TTCA Section
101.106(f) dictates mandatory dismissal, on the employee’s motion, of a suit filed against
the individual employee unless the plaintiff amends the pleading within thirty days. There
is no similar provision in the NMTCA, and applying the Texas provision would frustrate
New Mexico’s strong interest in providing compensation and access to the courts to the
residents of our state. See Sam, 2006-NMSC-022, ¶ 26. This concern is heightened given the
lack of options Ms. Montaño had to pursue surgery in New Mexico. Applying TTCA §
101.106(f) undermines New Mexico’s policy in this case.

{50} I would decline to extend comity to those provisions of the TTCA which undermine

 17
New Mexico policy. See Sam, 2006-NMSC-022, ¶ 21. Instead, I would recognize Texas law
to the extent consistent with the NMTCA. Cf. Hyatt, ___ U.S. at ___, 136 S. Ct. at 1282-83
(holding that Nevada adopted an unconstitutional policy of hostility toward the sister state
when it awarded damages inconsistent with the general principles of Nevada immunity law).

III. OTHER POLICY CONSIDERATIONS

{51} I agree with the majority that maintaining access to Texas medical facilities is of
utmost importance to New Mexicans who, like Ms. Montaño, depend on Texas providers for
medical treatment. Maj. op. ¶ 31. However, without evidence of the potential impact that
declining to extend comity would have on New Mexicans’ access to care, I cannot conclude
that it would be contrary to public policy to apply the very laws enacted to protect New
Mexicans who are victims of medical negligence.

{52} Other courts have distinguished the interest in ensuring redress for medical
malpractice from the interest in maintaining the availability of medical services. See
Simmons, 670 P.2d at 1383-84. In Simmons, the Supreme Court of Montana declined to
exercise jurisdiction over an Oregon state medical laboratory as a matter of comity. Id. at
1386. As in this case, the state laboratory was performing a regional medical service within
its own boundaries and the two states had a shared interest in medical testing technology. Id.
at 1385-86. The Court held that declining to extend comity could conceivably jeopardize the
availability of interstate medical testing. Id. However, the Court declined to extend its
holding to cases involving medical malpractice, recognizing that “[j]ustice undeniably would
be defeated if the refusal to assert jurisdiction would insulate Oregon from any malpractice
claims.” Id. at 1384. By this reasoning, the interest in access to care does not overcome New
Mexico’s interests in litigating the case.

IV. CONCLUSION

{53} Comity does not demand that the forum state abandon its important interests in favor
of the sister state’s. See Sam, 2006-NMSC-022, ¶ 16 (“[I]n order to refuse to honor the laws
of another state, a forum state only needs to declare that the other state’s law would violate
its own legitimate public policy.”). Rather, it encourages the forum state to accommodate
any competing interests without abdicating its own. The majority’s deference to the interests
of Texas shifts the comity analysis away from the overarching issue of whether extending
comity would undermine New Mexico public policy. Id. ¶ 21. When extending comity would
undermine the policy embodied in the NMTCA, see id. ¶ 21, New Mexico has a strong
interest in litigating the case.

{54} For these reasons, I respectfully dissent in part.

 ____________________________________
 BARBARA J. VIGIL, Justice

 18